**Charles A. McKINSEY,
Plaintiff–Appellant,**

v.

**SENTRY INSURANCE, a Mutual
Company, Defendant–
Appellee.**

**No. 92–3194.**

United States Court of Appeals,
Tenth Circuit.

Feb. 19, 1993.

Midgley, Gangwere, Clarke & Kitchin, Kansas City, MO, for plaintiff-appellant.

Gordon E. Wells, Jr. of Lathrop & Norquist, Overland Park, KS, and David V. Clark, Kansas City, MO, for defendant-appellee.

Before ANDERSON and EBEL, Circuit Judges, and BRIMMER,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Plaintiff was hired by defendant Sentry Insurance Co. as a sales representative on May 30, 1987, at the age of fifty-three, and was terminated on April 7, 1989, shortly after he turned fifty-five. Plaintiff sued Sentry for alleged violations of the Age Discrimination in Employment Act (ADEA), the Kansas Age Discrimination in Employment Act, and the Employee Retirement Income Security Act of 1974 (ERISA) in connection with his termination. On cross-motions, the district court entered summary judgment for Sentry on all plaintiff's claims. Plaintiff appeals only the district court's rulings on his ERISA claims.[1]

We review the grant or denial of summary judgment de novo, applying the same standard as the district court under Fed. R.Civ.P. 56. *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990). Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "When applying this standard, we are to examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Abercrombie*, 896 F.2d at 1230.

This appeal presents the following issues: (1) Can plaintiff maintain a claim against Sentry as the "de facto" plan administrator for failing to provide informa-

Craig T. Kenworthy of Swanson, Midgley, Gangwere, Clarke & Kitchin, Overland Park, KS, and Richard N. Bien of Swanson,

---

* Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

tion required by ERISA when the retirement plan specifically designates another person as the administrator? (2) Is Sentry's Golden Career Bonus Plan an "employee pension benefit plan" or "pension plan" within the meaning of ERISA? (3) Did plaintiff demonstrate a genuine issue of material fact existed as to whether Sentry terminated him with specific intent to interfere with plaintiff's attainment of rights under an ERISA-covered plan? We answer each question in the negative, and affirm the entry of summary judgment for Sentry.

## I.

■ Plaintiff asserted two claims against Sentry under ERISA for failing to provide him information about its benefit plans. ERISA requires the plan administrator to furnish certain information to plan participants and beneficiaries, either automatically or upon written request of the participant or beneficiary.[2] 29 U.S.C. §§ 1024, 1025. If the plan administrator "fails or refuses to comply with a request for any information which such administrator is required by [ERISA] to furnish to a participant or beneficiary ... by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request" the court may, in its discretion, hold the administrator personally liable to the participant or beneficiary "in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." *Id.* § 1132(c)(1).

In its summary judgment motion, Sentry disputed that the correspondence plaintiff and his counsel addressed to various Sentry employees about benefits available to

plaintiff under the Sentry Employee Retirement Plan or the Golden Careers Bonus Plan constituted written requests for information sufficient to trigger the requirements of § 1025 and the concomitant penalties of § 1132(c) for failing to provide the information requested. Sentry further argued that even if plaintiff's correspondence were sufficient, Sentry was not the plan administrator and, therefore, could not be held liable under § 1132(c). Because we agree with the district court that Sentry was not the plan administrator and, therefore, cannot be held liable under § 1132(c), we do not reach the issue whether the correspondence from plaintiff and his counsel was sufficient to trigger liability on the part of the plan administrator.

ERISA defines the plan "administrator" as

(i) the person specifically so designated by the terms of the instrument under which the plan is operated;

(ii) if an administrator is not so designated, the plan sponsor; or

(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

*Id.* § 1002(16)(A). The "plan sponsor" is defined as

(i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar

---

**2.** Sentry does not challenge plaintiff's standing as a participant under the plan. *See Firestone Rubber & Tire Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Raymond v. Mobil Oil Corp.,* 983 F.2d 1528 (10th Cir.1993); *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 473–74 (10th Cir.), *cert. denied,* 498 U.S. 898, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990). Based upon our compulsory review of the standing issue, *see Citizens Concerned for Separation of Church & State v. City & County of Denver,* 628 F.2d 1289,

1301 (10th Cir.1980) ("'Although raised by neither of the parties, we are first obligated to examine the standing of [plaintiff], as a matter of the case-or-controversy requirement associated with Art. III, to seek ... relief in the District Court.'") (quoting *Juidice v. Vail,* 430 U.S. 327, 331, 97 S.Ct. 1211, 1215, 51 L.Ed.2d 376 (1977)), *cert. denied,* 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981), we conclude there is evidence in the record to support plaintiff's standing.

group of representatives of the parties who establish or maintain the plan.

*Id.* § 1002(16)(B).

Plaintiff does not dispute that the Sentry Employee Retirement Plan (SERP) specifically designated Alfred Noel, a vice president of Human Resources, as the plan administrator.[3] Nor does plaintiff dispute that he signed a receipt for the employee handbook, which contained a summary of the SERP indicating that Mr. Noel was the plan administrator. Instead, plaintiff argues that "the analysis of identifying the plan administrator within the meaning of 1132(c) does not end with the statutory definition.... [T]he court may look beyond the specific designation in the plan instrument to determine what entity actually controls the plan administration." Appellant's Br. at 19.

Plaintiff relies on the First Circuit's opinion in *Law v. Ernst & Young*, 956 F.2d 364 (1st Cir.1992), for his argument that Mr. Noel was the plan administrator "in name only" and Sentry was the "de facto" administrator. Appellant's Br. at 19–24. In *Law*, the First Circuit held that although the Retirement Committee for Arthur Young, the predecessor to Ernst & Young, was specifically designated as the administrator under the pension plan, based on a "plethora of evidence indicating Arthur Young had assumed and controlled the plan administrator's function of furnishing required information in response to a plan beneficiary's request," 956 F.2d at 372, Arthur Young, itself, could be held liable as the *"de facto"* plan administrator under § 1132(c), *id.* 956 F.2d at 374.

If we were to accept the rationale of *Law*, we agree that plaintiff would have a strong argument that Sentry was the de facto administrator of the SERP. In light of the plain language of the statute, however, we must reject the rationale advanced by the First Circuit and relied on by plaintiff here. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S.

102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."); *Mountain Am. Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 447 (10th Cir.1990) ("When statutory language is not ambiguous, it is controlling.").

Section 1002(16)(A) provides that if a plan specifically designates a plan administrator, then that individual or entity is *the* plan administrator for purposes of ERISA. The statutory language is clear and unambiguous, and admits of no other interpretation. This is not one of those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). We disagree with the First Circuit's assertion that permitting a plaintiff to bring a § 1132(c) claim against his or her employer as the de facto plan administrator is necessary to further congressional intent "that employees have a remedy when they are denied timely information about their ERISA benefits." *Law*, 956 F.2d at 373.

If in practice, company personnel other than the plan administrator routinely assume responsibility for answering requests from plan participants and beneficiaries, a plaintiff's suit against the plan administrator will not necessarily fail, as the First Circuit suggests in *Law*, 956 F.2d at 373. Rather, the actions of the other employees may be imputed to the plan administrator. *See Bova v. American Cyanamid Co.*, 662 F.Supp. 483, 491 (S.D.Ohio 1987) (holding plaintiff's failure to address his written request to the plan administrator personally was not a defense to his § 1132(c) claim because "the plan summary instruct[ed] employees to direct inquiries to their personnel or employee benefits departments");

---

**3.** Because, as we hold in Part II., *infra*, Sentry's Golden Careers Bonus Plan is not covered by ERISA, plaintiff cannot assert a claim under § 1132(c) based on the failure to provide information about this plan. Therefore, we need not address the Golden Careers Bonus Plan in the context of plaintiff's § 1132(c) claim.

*Porcellini v. Strassheim Printing Co.*, 578 F.Supp. 605, 616 (E.D.Pa.1983) (holding that written request for information made to employee of corporate plan administrator was sufficient to meet statutory requirement that participant send written request to plan administrator). The statutory liability for failing to provide requested information remains with the designated plan administrator, however, not with the employer or its other employees.

We therefore reject the expansive definition of plan "administrator" advanced by the First Circuit and plaintiff here, and conclude that because Sentry was not the administrator designated by the SERP, plaintiff could not assert a § 1132(c) claim against Sentry. *Cf. Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117, 109 S.Ct. 948, 957, 103 L.Ed.2d 80 (1989) (rejecting appellate court's interpretation of the term "participant" under ERISA because "it strays far from the statutory language"); *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1533, 1537 (10th Cir.1993) (basing determination of who is a "participant" under ERISA on conventional meaning of statutory language despite plaintiffs' argument that defining the term in such a way as to exclude them would leave plaintiffs without a remedy). The district court correctly entered summary judgment in favor of Sentry on plaintiff's § 1132(c) claims.

## II.

■ Plaintiff's ERISA claims related not only to the SERP, but to Sentry's Golden Career Bonus Plan (GCBP), pursuant to which sales representatives were given bonus allocations based on their sales of insurance. Plaintiff asserted that the GCBP was an "employee pension benefit plan" or a "pension plan" within the meaning of ERISA; Sentry asserted that it was not and, therefore, that plaintiff could not pursue an ERISA claim based on the GCBP.

ERISA defines both an "employee benefit pension plan" and a "pension plan" as any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

> (i) provides retirement income to employees, or
>
> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,

regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A).

The regulations the Secretary of Labor promulgated pursuant to § 1002(2)(B) to "clarif[y] the limits of the defined terms 'employee pension benefit plan' and 'pension plan' for purposes of Title I of the Act," 29 C.F.R. § 2510.3–2(a), discuss bonus programs as follows.

> For purposes of title I of the Act and this chapter, the terms "employee pension benefit plan" and "pension plan" shall not include payments made by an employer to some or all of its employees as bonuses for work preformed, *unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees.*

*Id.* § 2510.3–2(c) (emphasis added).

Although this court has not had occasion to address whether a plan "provides retirement income" or "results in a deferral of income" within the meaning of § 1002(2)(A), other courts have. Thus, the Fifth Circuit has held that "[t]he words 'provides retirement income' patently refer only to plans designed for the purpose of paying retirement income whether as a result of their express terms or surrounding circumstances," not simply to "[a]ny outright conveyance of property to an employee that might result in some payment to him after retirement." *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 575 (5th Cir.1980); *accord Williams v. Wright*, 927 F.2d 1540, 1546–47 (11th Cir.1991).

By its express terms, the GCBP was established

> as a deferred compensation plan for Sales Representatives ... for the sole purpose of promoting in career sales representatives the strongest interest in the successful operation of the Company, loyalty to the organization and increased effectiveness of their work by providing a method for sharing in the growth of the Company based upon the amount of Sales Credits they produce in accordance with the terms of the Plan.

Appellant's App., Vol. II, Sentry Golden Career Bonus Plan for Sales Representatives, Art. 1, at 137.

Pursuant to the GCBP, a sales representative becomes eligible for bonus allocations and interest allocations on January 1 following her/his first anniversary as a sales representative. *Id.*, Art. 4.1, at 139. An eligible sales representative's rights in the allocations made to her/his account each year will vest in accordance with a schedule that provides for 100% vesting by the end of the seventh year of eligibility. *Id.*, Art. 7.1, at 139. On December 31 following the fifth anniversary as a sales representative, an employee's rights in those allocations made to her/his account before s/he reached eligibility will vest. *Id.*, Art. 7.7, at 140. A sales representative may at any time withdraw all or any portion of the vested allocations in her/his account. *Id.*, Art. 8.1, at 140.

Notwithstanding the vesting schedule set forth in Article 7.1, a sales representative's rights in any allocations made to her/his account will fully vest upon her/his death or retirement. *Id.*, Art. 7.4, at 140. In the event of termination, a sales representative loses any right, title, or interest in any nonvested portion of her/his allocations. *Id.*, Art. 9.1, at 140. Any vested allocations remaining in the account shall be paid to the sales representative within ninety days of her/his termination, subject to the forfeiture provisions of Article Ten. *Id.*, Art. 9.2, at 140.

Plaintiff argues that because a sales representative *can* defer payment of bonus and interest allocations until the termi-

nation of employment or to provide retirement income, the GCBP qualifies as an employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2)(A) and 29 C.F.R. § 2510.3–2(c). We disagree. The plan permits a sales representative to withdraw the vested portion of her/his allocations at any time during the course of her/his employment; it does not provide for the *systematic* deferral of payment.

Therefore, the GCBP does not qualify as an employee pension benefit plan or a pension plan under 29 C.F.R. § 2510.3–2(c), and the district court properly entered summary judgment for Sentry on plaintiff's ERISA claims to the extent they were based on the GCBP. *See Hagel v. United Land Co.*, 759 F.Supp. 1199, 1202 (E.D.Va. 1991) (holding plan that "provided plaintiff with income, in the form of a bonus, *during* the course of his employment" was not an employee pension benefit plan within the meaning of ERISA).

### III.

In Count V of his amended complaint, plaintiff alleged that Sentry violated 29 U.S.C. § 1140 by discriminatorily terminating him for the purpose of interfering with his attainment of rights under the "various employee welfare and benefit plans and pension benefit plans at issue here." Appellant's App., Vol. I, First Amended Complaint, at 14. The statute provides in pertinent part as follows:

**§ 1140. Interference with protected rights**

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or

the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140.

On appeal, plaintiff states that his "claim on Count V of his Complaint rests upon plaintiff's interest in the Golden Careers Plan," Appellant's Br. at 27, and argues facts relating solely to that plan, *see* Appellant's Reply Br. at 13. Because plaintiff does not argue that his § 1140 claim is based on his right to benefits under the SERP, plaintiff is deemed to have waived any § 1140 claim based on the SERP on appeal. *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n. 7 (10th Cir.1990); *Bledsoe v. Garcia*, 742 F.2d 1237, 1244 (10th Cir.1984).

As we held in Part II, *supra,* the GCBP is not a plan covered by ERISA. Because ERISA does not protect plaintiff's rights under the GCBP, that plan cannot support a § 1140 claim for interference with protected rights. Therefore, the district court properly entered summary judgment in favor of Sentry on plaintiff's § 1140 claim.

The judgment of the United States District Court for the District of Kansas is AFFIRMED.