46 F.3d 1480
 18 Employee Benefits Cas. 2400, Pens. Plan Guide P 23903T
Jesse M. AVERHART, Plaintiff-Appellant,
v.
US WEST MANAGEMENT PENSION PLAN, Defendant-Appellee.
Joan M. SANDQUIST, and Theodore C. Sandquist, Plaintiffs-Appellants,
v.
US WEST MANAGEMENT PENSION PLAN, and John G. Shea,
Defendants-Appellees.
Martha J. SABELL, Jack G. Laird, Gerald Wuerker, and H. Vern
White, Plaintiffs-Appellants,
v.
US WEST MANAGEMENT PENSION PLAN, Defendant-Appellee.
 Nos. 92-1317, 92-1321 and 92-1375.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 28, 1994.
Order Denying Rehearing Feb. 21, 1995.
 
 Timothy J. Parsons (David B. Seserman and Dean C. Heizer, with him on the brief) of Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, CO, for plaintiffs-appellants.
 D. Ward Kallstrom of Lillick & Charles, San Francisco, CA (Richard A. Belfanti of Lillick & Charles, San Francisco, CA, Dirk W. de Roos, Denver, CO, and Leon Marks of US WEST, Inc., with him on the brief), for defendant-appelleee US WEST Management Pension Plan.
 Before TACHA, HOLLOWAY, and KELLY, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 The plaintiffs/appellants in Averhart v. US WEST Management Pension Plan, No. 92-1317, Sandquist, et al. v. US WEST Management Pension Plan and John G. Shea, No. 92-1321, and Sabell, et al. v. US WEST Management Pension Plan, No. 92-1375, appeal from summary judgments in favor of defendants/appellees US WEST Management Pension Plan (the Pension Plan) and John G. Shea. We decide these three appeals in this opinion. For reasons that follow, we affirm.
 
 
 2
 * Plaintiffs are former employees of US WEST Communications, Inc., or its predecessors or affiliates. Some were of the manager level and some of the director level. They were participants in the Pension Plan. In March 1987, plaintiffs Averhart (No. 92-1317) and the Sandquists (No. 92-1321) took extended leaves of absence under a special severance pay plan in effect at that time--the Enhanced Management Transition Program (EMTP).[1] Plaintiffs Sabell, Laird, Wuerker, and White (No. 92-1375) retired between May and October 1989 under no special retirement program.
 
 
 3
 In April 1989, US WEST implemented a voluntary severance program to reduce the number of director-level employees in the company--the US WEST Management Force Imbalance Guidelines Directors' Program Amendment (the Directors' Program). As an early retirement incentive, the Directors' Program offered certain director-level employees a choice of various severance pay options if they elected to retire or resign during 1989. This program was available only for directors.
 
 
 4
 On November 29, 1989, the US WEST board of directors adopted a resolution authorizing the Employees' Benefit Committee (EBC) to amend the Pension Plan, effective January 1, 1990, to provide certain special pension benefits to eligible employees who would elect between January 2 and January 31, 1990, to retire as of February 28, 1990. By its terms the amendment--dubbed the "5 + 5 amendment"--limited eligibility to "active employee[s] on the payroll as of February 28, 1990, with five or more years of term of employment as of February 28, 1990[.]" Averhart App. at 197. A principal benefit provided under the 5 + 5 amendment was an increase of five years in the age and term of employment attributed to eligible employees for purposes of calculating their pension benefits. The latter benefit was extended not only to eligible employees, as defined above, but also "employees who terminated during 1989 pursuant to any of the options offered in conjunction with the US WEST Director's Program." Averhart App. at 263.
 
 
 5
 Plaintiffs learned of the 5 + 5 amendment in late 1989 or early 1990 and then submitted claims for benefits thereunder. The Secretary of the EBC, defendant John G. Shea, denied the claims, citing the fact that plaintiffs were not active employees on the payroll as of February 28, 1990, and therefore did not qualify for benefits under the terms of the amendment.
 
 
 6
 Plaintiffs appealed Shea's decision to the EBC at large. The Committee denied the appeals on the ground that plaintiffs did not "meet the eligibility requirement of the [5 + 5 amendment that] you must have been an active employee on the payroll as of February 28, 1990 or on a leave of absence which guaranteed reinstatement." Averhart App. at 272; Sandquist App. at 309; Sabell App. at 308 (emphasis in original).
 
 II
 
 7
 In 1991, plaintiffs filed their suits under 29 U.S.C. Sec. 1132(a)(1)(B), for determinations that they were eligible for benefits under the 5 + 5 amendment. Plaintiffs alleged that US WEST had made certain pre-severance representations which plaintiffs relied on in deciding to retire and which therefore operated to estop the EBC from denying plaintiffs' benefit claims.[2] Plaintiffs further claimed that the EBC had acted arbitrarily and capriciously in denying their claims and that they were entitled to recovery of attorneys' fees and costs incurred in bringing suit. The Sandquists also sought civil penalties from defendant Shea for his alleged failure to make a timely response to their written requests for certain documents relating to their retirement.
 
 
 8
 Upon completion of discovery the parties filed cross-motions for summary judgment, including a "Joint Stipulation of Facts and Exhibits In Support of Cross-Motions for Summary Judgment." Averhart Supp.App. at 1; Sabell App. at 33.[3] The district court granted defendants' motions while denying those of plaintiffs, setting forth the bases for its rulings in a combined Opinion and Order in the Averhart/Sandquist cases and a separate Opinion and Order in the Sabell case. Averhart App. at 155; Sabell App. at 162.
 
 
 9
 First, the court held that plaintiffs' promissory estoppel theory is barred by ERISA's preemption provisions. In support, the court cited our ruling that " 'ERISA's express requirement that the written terms of a benefit plan shall govern forecloses the argument that Congress intended for ERISA to incorporate state law notions of promissory estoppel.' " Averhart App. at 160 (quoting Straub v. Western Union Telegraph Co., 851 F.2d 1262, 1265-66 (10th Cir.1988), and citing Peckham v. Gem State Mut. of Utah, 964 F.2d 1043, 1050 (10th Cir.1992)); Sabell App. at 166 (quoting Straub, 851 F.2d at 1265-66).
 
 
 10
 Second, the court rejected plaintiffs' claim that the EBC had arbitrarily and capriciously denied their request for 5 + 5 benefits. The court found the committee's ruling was supported by the requirement in the 5 + 5 amendment that participants be "active employee[s] on the payroll as of February 28, 1991 or on a leave of absence with guaranteed reemployment." (Emphasis in original.)
 
 
 11
 Third, as to the company's extension of 5 + 5 benefits to director-level employees who had left the payroll under the Directors' Program, the court held this decision to be a matter of plan design beyond the scope of the EBC's fiduciary responsibilities and therefore unreviewable, citing Fletcher v. Kroger Co., 942 F.2d 1137, 1139-40 (7th Cir.1991).
 
 
 12
 Fourth, the court rejected as unsupported by the evidence the Sabell plaintiffs' claim that the 5 + 5 amendment was not properly approved by the US WEST Board of Directors. The court noted that assuming arguendo no proper approval had been given, the entire 5 + 5 amendment would be invalid and no one--including plaintiffs--would be entitled to benefits thereunder.
 
 
 13
 Fifth, the court denied the Sandquist plaintiffs' claim for civil penalties from defendant Shea for his alleged failure to make a timely response to their written requests for documents. The court held that Mr. Shea did not appear to be a plan "administrator" subject to civil penalties under 29 U.S.C. Sec. 1132(c); that no evidence indicated either bad faith by Shea or prejudice to the Sandquists; and that in any event Shea was not personally responsible for any delay in providing the relevant materials to the Sandquists.
 
 
 14
 Finally, exercising its discretion under 29 U.S.C. Sec. 1132(g)(1), the court denied plaintiffs' claims for attorneys' fees and costs. Due to its denial of plaintiffs' summary judgment motions and the factors outlined in Downie v. Independent Drivers Ass'n Pension Plan, 945 F.2d 1171, 1172-73 (10th Cir.1991), the court concluded that each party should bear its own fees and costs. That ruling is not challenged on appeal.
 
 III
 
 15
 In reviewing a grant of summary judgment, we apply a de novo standard of review to the district court's conclusions of law. Awbrey v. Pennzoil Co., 961 F.2d 928, 930 (10th Cir.1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
 
 
 16
 Because the Plan gave the EBC discretion to make the rulings in question,[4] the district court properly reviewed the rulings under the arbitrary and capricious test. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989). The district court's holding that the ruling by the EBC was not arbitrary and capricious is a legal conclusion and our review of the court's ruling, although not the underlying administrative decision, is plenary. Sandoval v. Aetna Life & Casualty Ins. Co., 967 F.2d 377, 380 (10th Cir.1992). The EBC's actions will not be set aside if based on "a reasonable interpretation of the plan's terms and ... made in good faith." Torix v. Ball Corp., 862 F.2d 1428, 1429 (10th Cir.1988).
 
 IV
 
 17
 * Plaintiffs' Promissory Estoppel Claims
 
 
 18
 As noted, the district court held that plaintiffs could not state a claim for promissory estoppel because " 'ERISA's express requirement that the written terms of a benefit plan shall govern forecloses the argument that Congress intended for ERISA to incorporate state law notions of promissory estoppel.' " Averhart App. at 160 (quoting Peckham, 964 F.2d at 1050 (citing Straub, 851 F.2d at 1265-66)). As Straub notes, 29 U.S.C. Sec. 1144(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 851 F.2d at 1263.
 
 
 19
 On appeal, plaintiffs argue that preemption is inapplicable to their estoppel claims here because those claims do not seek to alter, modify, or avoid any terms of the Pension Plan but, rather, to reinterpret the Plan in light of alleged employer representations concerning plaintiffs' benefits thereunder. They urge that we apply a federal common law equitable estoppel principle to these facts and afford them relief. According to plaintiffs, our Peckham opinion did not foreclose the reliance they place on company representations, citing footnote 13 of the opinion which states:
 
 
 20
 Where the written language of a plan is clear, as it is here, any representation that is contrary to [the written] language [of an ERISA plan] can be viewed only as a purported modification of the plan and, hence, preempted by ERISA. We do not address whether such a representation can be used to interpret an ambiguous term of the plan.
 
 
 21
 964 F.2d at 1050 n. 13 (emphasis added).
 
 
 22
 Our Peckham opinion rejected an attempt to assert claims made against an ERISA employee welfare benefit plan. The plaintiff, Peckham, premised her estoppel claim on alleged statements by company representatives to hospital employees that a newborn child of Ms. Peckham's was covered by the plan. We held that the "promissory estoppel claim is precluded under ERISA," id. at 1050, and likewise that the doctrine of estoppel by conduct is preempted by the statute. Id. We explained the rationale for these holdings: first, state laws--whether statutory or common law--may differ from state to state so that a plan might be subjected to conflicting state regulation; and second, state laws permitting a plan representative to modify a plan orally or by conduct could compromise the financial integrity of the written plan.
 
 
 23
 We have considered the statements alleged in the complaints of each of the plaintiffs in connection with their estoppel theory. See Averhart App. at 3; Sandquist App. at 4-5; Sabell App. at 3. Averhart avers that in deciding to participate in the EMTP, he relied on representations by employees of US WEST, Inc., including statements made to him by Mr. Fred Cook, then a Vice President of Human Resources who was responsible for administration of the EMTP, and statements in the EMTP summary plan description that participants in the EMTP would not "be penalized in their pensions...." The only references we find to terms of the Plan were tied to the "active employee on the payroll" term in the 5 + 5 amendment. We agree with the defendants, however, that the terms of the amendment leave no room to argue that the plaintiffs, notwithstanding their retirement with no guarantee of reemployment, were somehow "active employee[s] on the payroll." Thus no ambiguous term is identified. Moreover the statements relied on by the plaintiffs in support of their estoppel claims were made before the relevant Pension Plan provision (the 5 + 5 amendment) was even adopted.
 
 
 24
 What we have said applies equally to the statements alleged to have been made by the Sandquists' complaint, namely that participants in the EMTP would not be penalized in their pensions for having participated in the EMTP. Sandquist App. at 4-5. Again, no ambiguous term in the Plan was identified as a basis for the estoppel theory. The complaint of the plaintiffs in the Sabell case lacks any identification of ambiguous Plan terms also. Their complaint alleged that they relied on representations and statements of employees of US WEST, Inc. that the company was not considering any form of a voluntary early retirement program and had no intention of offering any form of any early retirement program which included an amendment to the terms of the Pension Plan. They say that but for their reliance on the representations, they would have continued their employment with US WEST, Inc. and would thus have been active employees on the payroll when the Management Pension Enhancement (5 + 5) was announced. Again, no ambiguous Plan term is identified.
 
 
 25
 We hold that, in any event, the plaintiffs have not shown any viable basis for the estoppel theory they advance--that there were representations made interpreting ambiguous Plan terms. Courts that have recognized estoppel claims in these circumstances have done so only where "the terms of a plan are ambiguous" and "the employer['s] communications constituted an interpretation of that ambiguity." Alday v. Container Corp. of America, 906 F.2d 660, 666 (11th Cir.1990), cert. denied, 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991). Accord Novak v. Irwin Yacht and Marine Corp., 986 F.2d 468, 472 (11th Cir.1993) (federal equitable estoppel claim allowed in ERISA cases only "when the representations made were interpretations, not modifications, of the plan.... For a representation to be an interpretation of a plan, the relevant provisions of the plan must be ambiguous, that is to say, 'reasonable persons' could disagree as to [the provisions'] meaning and effect."); National Companies Health Plan v. St. Joseph's Hospital, 929 F.2d 1558, 1571-72 (11th Cir.1991) (federal common law estoppel claim recognized "when an employee relies, to his detriment, on an interpretation of an ambiguous provision in a plan by a representative of that plan.").
 
 
 26
 Moreover, all of the plaintiffs rely on Kane v. Aetna Life Insurance Co., et al., 893 F.2d 1283 (11th Cir.), cert. denied, 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). That opinion held that given an ambiguity noted there in the plan provisions, the federal common law of equitable estoppel could be applied. Id. at 1286. Again, we note that the premise of ambiguity is lacking here so that Kane does not strengthen the plaintiffs' position. We note that the Ninth Circuit has found the reasoning of Kane persuasive. See Greany v. Western Farm Bureau Life Insurance Co., 973 F.2d 812, 822 (9th Cir.1992). Greany held that because the plan involved was unambiguous, the plaintiffs could not avail themselves of the federal common law claim of equitable estoppel.
 
 
 27
 We are convinced that the Plan term cited here, concerning an "active employee on the payroll" within the meaning of the 5 + 5 amendment, was not ambiguous. No identification is made of an ambiguous provision, nor of any interpretation of an ambiguous provision, and accordingly there is no evidentiary basis for applying the estoppel theory relied on by the plaintiffs.
 
 
 28
 Nor are we persuaded that here the plaintiffs' claims may fare better because plaintiffs specifically rely on a federal common law theory, as distinguished from an estoppel grounded in State law. It is true that the preemption language in 29 U.S.C. Sec. 1144(a) is phrased in terms that the federal statutory provisions "shall supersede any and all State laws " that relate to any employee benefit plan (emphasis added). However our opinion in Miller v. Coastal Corp., 978 F.2d 622 (10th Cir.1992), directly addressed a claim for "unpaid pension benefits from defendants under a federal common law estoppel theory," id. at 623, based on written and oral representations that the plaintiff Miller had much more prior service to his credit than the pension plan committee recognized. We rejected the federal common law estoppel theory and held that the same concerns about oral modifications voiced in Straub v. Western Union Tel. Co., 851 F.2d 1262, 1265 (10th Cir.1988), applied to Miller's claim, precluding relief on his federal common law estoppel theory.
 
 B
 
 29
 Plaintiffs' Claim of Arbitrary and Capricious Denial of
 
 Benefits Under the 5 + 5 Amendment
 
 30
 Plaintiffs also contend the district court erred in holding that the EBC's denial of plaintiffs' claim for benefits under the 5 + 5 amendment was not arbitrary and irrational. In Averhart and Sandquist, plaintiffs argue that the district court's affirmance of the EBC's denial of benefits should be reversed because 1) the district court considered arguments and evidence that were not before the EBC when it made its decision; and 2) the evidence before the EBC does not support the denial of benefits. The Sabell plaintiffs, on the other hand, argue that the EBC's denial of benefits was arbitrary and irrational because 1) the 5 + 5 amendment was not properly approved by the US WEST Board of Directors; and 2) the company extended 5 + 5 benefits to employees who retired under the Directors' Program. We address each of plaintiffs' arguments in turn.
 
 
 31
 1. The arguments and evidence relied on by the district court.
 
 
 32
 As noted, the district court affirmed the EBC's denial of plaintiffs' claims for 5 + 5 benefits based principally on its finding that plaintiffs' were not "active employee[s] on the payroll" as required in order for such benefits to accrue. Averhart App. at 7 (emphasis in original). The court cited the fact that plaintiffs left the active payroll of the company during 1989, either under the EMTP or through regular retirement, and thus were not "on the payroll as of February 28, 1990 or on a leave of absence which guaranteed reinstatement" so as to qualify for 5 + 5 benefits. Id. at 7-8.
 
 
 33
 The Averhart and Sandquist plaintiffs assert that the facts relied on by the district court were not before the EBC and thus could not serve to support its denial of benefits. See Sandoval v. Aetna Life & Casualty Ins. Co., 967 F.2d 377, 380 (10th Cir.1992). However, the record on appeal does not disclose the nature and extent of the evidence before the EBC when it denied plaintiffs' claim for 5 + 5 benefits or whether that evidence differed from what the district court relied on below. Under these circumstances, we simply cannot determine whether the district court exceeded its evidentiary bounds, as defined by Sandoval, in affirming the EBC's denial of benefits. Because plaintiffs have thus failed to demonstrate reversible error in the district court's decision, we will not disturb that decision on appeal.
 
 
 34
 2. The EBC's alleged failure to consider evidence indicating that plaintiffs were "active employee[s] on the payroll."
 
 
 35
 The Averhart and Sandquist plaintiffs argue that "all the evidence before the EBC suggested that [each plaintiff] was, in fact, 'an active employee on the payroll' " and that the EBC ignored such evidence in denying plaintiffs' claims for benefits. Averhart Brief at 25; Sandquist Brief at 26-27.
 
 
 36
 We have carefully reviewed the record and find no support for plaintiffs' claim that the EBC ignored any of the evidence before it in ruling on plaintiffs' benefits claims. Moreover, our review of the record convinces us that to the extent the relevant evidence was considered by the committee, it did not as plaintiffs argue, conclusively demonstrate that plaintiffs were "active employee[s] on the payroll as of February 28, 1990" so as to entitle them to 5 + 5 benefits. Instead, the record contains more than sufficient evidence to sustain the committee's contrary finding, including the undisputed evidence that plaintiffs had retired or had taken leaves of absence with no guarantee of reemployment as of February 28, 1990. Averhart Supp.App. at 2, 66; Sabell App. at 33. Based on the foregoing record evidence, we cannot set aside the district court's decision to affirm the EBC's denial of benefits to plaintiffs. See Torix, 862 F.2d at 1429.
 
 
 37
 3. The EBC's grant of 5 + 5 benefits to employees retiring under the Directors' Program.
 
 
 38
 The Averhart and Sandquist plaintiffs argue that the EBC's denial of their benefit claims was arbitrary and capricious because the "active employee[s] on the payroll" requirement was inconsistently applied, pointing out that director-level employees who had retired under the Directors' Program during 1989 were given 5 + 5 benefits notwithstanding their inactive employee status. Averhart Brief at 31-33; Sandquist Brief at 30-31. The extension of benefits to Directors' Program retirees was expressly provided for by the terms of the 5 + 5 amendment. Averhart App. at 263.
 
 
 39
 Plaintiffs claim the decision to pay benefits to some inactive employees but not others violated the committee's fiduciary responsibility under 29 U.S.C. Sec. 1104(a)(1) to act "solely in the interest of the participants and beneficiaries" under the Pension Plan. The district court held, and we agree, that the selective provision of benefits under the 5 + 5 amendment was a matter of plan design not subject to ERISA's fiduciary standards and judicial review. Averhart App. at 8 (citing Fletcher v. Kroger Co., 942 F.2d 1137, 1139-40 (7th Cir.1991)). As noted in McGath v. Auto-Body North Shore, Inc., 7 F.3d 665, 670-71 (7th Cir.1993) (citations omitted and emphasis added):
 
 
 40
 An employer can wear two hats: one as a fiduciary administering a pension plan and the other as the drafter of a plan's terms. Therefore, because the functions are distinct, an employer does not act as a fiduciary when it amends or otherwise sets the terms of a plan.... Because the defendants here were not acting as fiduciaries when they amended the plan, they breached no fiduciary duties allegedly owed ... when they altered the plan's eligibility requirements.
 
 
 41
 Accord Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan, 24 F.3d 1491, 1497-99 (3d Cir.1994); Elmore v. Cone Mills, 23 F.3d 855, 860-61 (4th Cir.1994) (en banc); Smith v. Hartford Ins. Group, 6 F.3d 131, 141 n. 13 (3d Cir.1993); Belade v. ITT Corp., 909 F.2d 736, 737-38 (2d Cir.1990); Landry v. Air Line Pilots Ass'n Intern., AFL-CIO, 901 F.2d 404, 414-15 (5th Cir.), cert. denied, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).[5]
 
 
 42
 Because the EBC's adoption of the 5 + 5 amendment was done in the committee's capacity as "drafter," it was not subject to ERISA's fiduciary standards. "[A]n employer is free to develop an employee benefit plan as it wishes because when it does so it makes a corporate management decision, unrestricted by ERISA's fiduciary duties." Haberern, 24 F.3d at 1498 (citation omitted). The fact that the 5 + 5 amendment may have "discriminated" against plaintiffs by denying them benefits extended to employees who retired under the Directors' Program is immaterial. "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983); accord Owens v. Storehouse, Inc., 984 F.2d 394, 398 (11th Cir.1993) (in order to state a claim under ERISA, "[i]t is insufficient merely to allege discrimination in the apportionment of benefits under the terms of the plan."); McGann v. H & H Music Co., 946 F.2d 401, 408 (5th Cir.1991) ("ERISA does not broadly prevent an employer from 'discriminating' in the creation, alteration or termination of employee benefit plans[.]"), cert. denied sub nom. Greenberg v. H & H Music Co., --- U.S. ----, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992).[6]
 
 
 43
 4. The approval of the 5 + 5 amendment by the US WEST Board of Directors.
 
 
 44
 The Sabell plaintiffs contend that the "active employee[s] on the payroll" requirement in the 5 + 5 amendment was invalid and should not have been applied to them because the requirement was not contained in the November 29, 1989, Board of Directors' resolution authorizing the EBC to adopt the proposed amendment. Plaintiffs' argument assumes that only the Board of Directors, not the EBC, had the authority to amend the Pension Plan. We disagree.
 
 
 45
 The Pension Plan expressly provides for amendments by the EBC itself "subject to the approval of the Board of Directors[.]" Averhart App. at 306. In this case, plaintiffs do not dispute that the EBC had Board approval to adopt the 5 + 5 amendment, albeit without specific reference to the "active employee[s] on the payroll" requirement. Because plaintiffs have thus failed to show that the adoption of the 5 + 5 amendment was procedurally flawed, we must reject their claim that the EBC was precluded from relying thereon in denying their benefit claims.
 
 
 46
 5. Mr. Shea's liability for allegedly failing to produce documents in a timely manner.
 
 
 47
 The Sandquist plaintiffs argue that the district court erroneously rejected their claim under 29 U.S.C. Sec. 1132(c) for civil penalties from Mr. Shea, the Secretary of the EBC, based on his purported failure to make a timely response to their request for documents relating to their retirement. The district court concluded, inter alia, that Mr. Shea could not be held personally liable for civil penalties under Sec. 1132(c) because he was not an "administrator" of the Pension Plan within the meaning of that section and Sec. 1002(16)(A)(i) (defining "administrator" generally). Sandquist Opening Brief, Att. at 10.
 
 
 48
 We agree with the district court that Mr. Shea was not an administrator of the Pension Plan and therefore could not be held liable for civil penalties under ERISA.[7] Section 1002(16)(A) defines "administrator" as:
 
 
 49
 (i) the person specifically so designated by the terms of the instrument under which the plan is operated;
 
 
 50
 (ii) if an administrator is not so designated, the plan sponsor; or
 
 
 51
 (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.
 
 
 52
 (Emphasis added.) Here, the Pension Plan specifically designates the EBC, not Mr. Shea, as "Plan Administrator." Sandquist Appellee's Supp.App. at 201. This designation of the committee as administrator is conclusive for purposes of applying Sec. 1132(c) and cannot be expanded or modified to include Mr. Shea, even if he, as plaintiffs allege, "acted as administrator, was the contact person for the EBC, and was responsible for (and took responsibility for) the tardy production of the requested documents." Sandquist Opening Brief at 39. As we indicated in McKinsey v. Sentry Ins., 986 F.2d 401, 404-05 (10th Cir.1993), even where "company personnel other than the plan administrator routinely assume responsibility for answering requests from plan participants and beneficiaries ... [t]he statutory liability for failing to provide requested information remains with the designated plan administrator ..., not with the employer or its other employees." See generally Jones v. UOP, 16 F.3d 141, 145 (7th Cir.1994) (citing cases addressing definition of "administrator" under ERISA, including McKinsey ).[8]
 
 V
 
 53
 Accordingly, the summary judgment decisions in Nos. 92-1317, 92-1321 and 92-1375 are AFFIRMED.
 
 ON PETITION FOR REHEARING
 
 54
 On consideration of the Petition for Rehearing of plaintiff-appellant Jesse M. Averhart and plaintiffs-appellants Joan M. Sandquist and Theodore C. Sandquist, and the Response of defendants-appellees US West Management Pension Plan and John G. Shea thereto, the court finds and concludes as follows:
 
 
 55
 The Petition for Rehearing addresses primarily the argument of plaintiffs-appellants that the district court erred by not limiting its review to "only the arguments and evidence before the administrator at the time" the decision was made to deny their benefit claim. See Sandoval v. Aetna Life & Casualty Ins. Co., 967 F.2d 377, 380 (10th Cir.1992) ("the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision."). The petition asserts that various evidentiary items were heavily relied on by the district court which were not before the administrator of the Plan when the benefit claims were rejected.
 
 
 56
 In connection with our opinion, the petition says that we erred in disregarding this argument on the reasoning that "the record on appeal does not disclose the nature and extent of the evidence before the [Employees' Benefit Committee] when it denied plaintiffs' claim for 5 + 5 benefits or whether that evidence differed from what the district court relied on below," so that we could not determine whether the court below exceeded its evidentiary bounds in its review of the administrative ruling. Op. at 1487. The petition points to the supplemental affidavit of defendant-appellee John G. Shea, which did state that he had had the opportunity to review the records of the EBC and could state with specificity what documents and materials were presented to and reviewed by the EBC regarding each of the appeals. Averhart App. at 116; Sandquist App. at 120.
 
 
 57
 We agree that the affidavit may reasonably be read to delineate the limits of the documentary materials before the EBC when it denied the appeals and thus to stake out the evidentiary bounds that the district court should have observed. Nevertheless, we conclude that the petition shows no prejudicial error in the reasoning and the judgments entered below. The essential basis for the district court's ruling was that the EBC's interpretation was not arbitrary and capricious in holding that the plaintiffs-appellants were not eligible for the 5 + 5 Amendment benefits "because they were not active employees on the payroll as of February 28, 1990 or on a leave of absence which guaranteed reinstatement." Memorandum Opinion and Order at 7. That ruling turned on the provisions in the 5 + 5 Amendment to the US West Management Pension Plan and the Enhanced Management Transition Plan. The judge reasoned that although the US WEST Management Pension Plan did not contain specific language requiring participants to be "active employees on the payroll," the 5 + 5 Amendment to the Plan and the Enhanced Management Transition Plan contain language to that effect. Memorandum Opinion and Order at 7.
 
 
 58
 Those controlling documents--the 5 + 5 Amendment and the EMTP--have been clearly recognized as proper grounds for consideration by the district court. These documents were discussed in plaintiff-appellant Averhart's opening brief, pp. 2-6, and in plaintiffs-appellants Joan M. Sandquist's and Theodore C. Sandquist's opening brief, pp. 2-6. The briefs both recognize, p. 8, that the appeals to the EBC were denied for reasons that the EMTP did not guarantee reinstatement; one must have been an active employee on the payroll as of February 28, 1990, or on a leave of absence which guaranteed reinstatement; and that because the plaintiffs-appellants did not meet the eligibility requirements, their appeals were denied. When the district court held that the interpretation of the Employees' Benefit Committee was not arbitrary and capricious, it grounded its ruling on the controlling provisions of the EMTP and the 5 + 5 Amendment. We are not persuaded that the plaintiffs-appellants have shown any prejudice to them by any violation by the district court of the proper evidentiary bounds it should have followed in making its ruling.
 
 
 59
 We hold that the petition of the plaintiffs-appellants, and all of the arguments made therein, fail to show any error prejudicial to them and accordingly the petition is DENIED.
 
 
 
 [1]
 Under the EMTP, Averhart and the Sandquists received lump-sum severance payments, continued benefit accruals under the Pension Plan, and continued coverage under some of the company's other benefit plans
 
 
 [2]
 Specifically, the Averhart and Sandquist plaintiffs alleged they were informed that they would not be penalized in their pensions by electing to participate in the EMTP. Averhart App. at 3. The Sabell plaintiffs in turn alleged they were told that US West was not considering any form of voluntary retirement program, including any amendment to the Pension Plan at the time of their retirement in 1989. Sabell App. at 3
 
 
 [3]
 None of the parties has argued, either in the district court or on appeal, that there is any dispute as to any issue of material fact
 
 
 [4]
 US WEST Management Pension Plan at 10, Ex. 11, Sandquist App. at 273
 
 
 [5]
 The fact that the 5 + 5 amendment was adopted by the EBC itself--pursuant to a resolution passed by the US WEST board of directors--adds nothing to plaintiffs' claim that the committee acted arbitrarily or capriciously. Cf. Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452, 1459 (10th Cir.1991) ("[T]he fact that an Administrator serves dual roles as company employee and as a pension plan fiduciary does not conclusively or presumptively establish that the administrators of the plan have acted arbitrarily and capriciously.")
 
 
 [6]
 As to the EBC's "administrative" decision to deny plaintiffs' claims for 5 + 5 benefits, this decision was based on the express terms of the 5 + 5 amendment, i.e., the "active employee on the payroll" requirement. As such, the decision complied with the committee's fiduciary obligation to discharge its duties "in accordance with the documents and instruments governing the plan...." 29 U.S.C. Sec. 1104(a)(1)(D); accord McGath, 7 F.3d at 670 ("Because the plan must be administered according to its terms, [footnote omitted] [plaintiff] cannot complain because he is held to those terms; this is true even if the rules were bent for another individual."); Shaw v. Kruidenier, 470 F.Supp. 1375, 1389-91 (S.D.Iowa 1979) (as a matter of law, benefits committee did not breach fiduciary duties by denying benefits to employees who were not entitled to such benefits under the terms of the plan), aff'd, 620 F.2d 307 (8th Cir.1980)
 
 
 [7]
 Because we affirm the district court on the foregoing ground, we need not and do not address the various alternative grounds advanced by the court in support of its judgment for Mr. Shea
 
 
 [8]
 We note that our interpretation of Secs. 1132(c) and 1002(16)(A)(i) does not necessarily leave plan participants without a remedy when they are denied a timely response to requests for information. In many cases, "the actions of the other employees may be imputed to the plan administrator" for purposes of assessing civil penalties under Sec. 1132(c). McKinsey, 986 F.2d at 404