**Nancy MILLENSIFER, Plaintiff–Appellant,**

v.

**RETIREMENT PLAN FOR SALARIED EMPLOYEES OF COTTER CORPORATION, Defendant–Appellee.**

No. 90–1304.

United States Court of Appeals, Tenth Circuit.

June 26, 1992.

---

Donald T. Trinen of Hart & Trinen, Denver, Colo., for plaintiff-appellant.

Robert R. Watson of Sidley & Austin, Chicago, Ill. (David W. Kerber and William L. Sasz of Kelly, Stansfield & O'Donnell, Denver, Colo., with him on the brief), for defendant-appellee.

Before HOLLOWAY and LOGAN, Circuit Judges, and BRATTON, Senior District Judge.*

* The Honorable Howard C. Bratton, Senior United States District Judge for the District of New Mexico, sitting by designation.

LOGAN, Circuit Judge.

Plaintiff Nancy Millensifer brought an action against the defendant Retirement Plan for Salaried Employees of Cotter Corporation (Plan) under 29 U.S.C. § 1132 to recover benefits she alleged were due her as widow and beneficiary of Plan participant Dale Lesher. The district court concluded that Lesher "did not meet the required conditions for retirement benefits under the Plan," I R. tab 12, at 11, and therefore granted defendant's motion for summary judgment. Plaintiff appeals.

## I

Dale Lesher was married to plaintiff Nancy Millensifer from 1953 until his death in 1983. Lesher, an employee of Cotter Corporation and a participant in the Plan, after working for Cotter for over twenty-four years, became seriously ill in 1982 and could no longer work. Lesher received his full salary of $3,332 per month from Cotter from August 25, 1982, until June 13, 1983, in compensation for accumulated sick pay and vacation. Lesher became eligible for permanent disability retirement benefits under the Plan in February 1983. But Lesher did not retire. After June 13, he became eligible for and received social security disability benefits and insurance payments under a Prudential long-term disability policy that Cotter maintained for its employees. After deducting Lesher's social security benefits, the insurance payments were $1,692.40 each month until he died on September 20, 1983.

Plaintiff argues that Lesher's choice not to retire was based on incorrect information provided by Cotter officials; that these officials told Lesher he was not entitled to disability retirement under the Plan until and unless he reached age fifty-five. Defendant asserts that "to the extent Lesher's rights were explained to him by a representative of the Plan, he was told that he would be entitled to disability retirement before attaining age 55, but that if he took disability retirement, his wife would not be

entitled to receive a joint or survivor annuity after his death." Appellee's Brief at 14; *see also* I R. tab 8, ¶¶ 3–6.

Upon Lesher's death at age fifty-four, plaintiff received a death-benefit payment pursuant to Cotter's group life insurance policy under the Plan. Cotter notified plaintiff that although Lesher had no other legal entitlement under the Plan at his death, the corporation had authorized a pension, on a joint and survivor basis, in the amount to which Lesher would have been entitled if he had lived to age fifty-five and retired. The pension of $201 per month would be paid to plaintiff until she died or remarried. These payments were made until October 1988, when Cotter became aware that plaintiff had remarried.

In January 1989, plaintiff's attorney wrote a letter asking for a determination of any rights of plaintiff under the Plan. The letter asserted that Lesher should have been declared disabled under the Plan by June 1983, thereby entitling Lesher to $416 per month for life, and after Lesher's death entitling plaintiff to $277 per month for life. The letter asserted that "Lesher was prevented from applying for a determination of permanent disability by express or implied representations of management to the effect that he would not be entitled to anything under the Plan until he reached the age of 55." I R. tab 6, att. A. The letter demanded an explanation of why benefits were not due, or an acknowledgement that benefits were due and agreement to make back due and continuing payments until plaintiff's death.

Cotter's response explained that Lesher chose not to take disability retirement, and thus was not eligible for disability benefits under the Plan. Further, the letter stated that even if Lesher had chosen disability retirement, plaintiff would not have received benefits after Lesher's death because the Plan did not provide for a joint and survivor annuity under disability retirement.

Plaintiff filed suit in federal court seeking disability retirement benefits for Lesher from February 25, 1983, until his death on September 20, 1983, and $250 per month as a joint and survivor annuity from the date of Lesher's death for the remainder of plaintiff's lifetime. In ruling on cross-motions for summary judgment, the district court found as follows:

> Because Mr. Lesher did not retire and did not attain the age of 55, as a matter of law he was not entitled to retirement benefits under any part of the Plan other than Section 2.5(B). In order to receive the benefits Plaintiff is seeking under Sections 2.3, 2.4, 2.2(B), and 2.6 (Option 2), Mr. Lesher would have had to retire and attain the age of 55. (*See* Section 2.3–Early Retirement and Retirement Income). Because Mr. Lesher did not meet the required conditions for retirement benefits under the Plan, the Court need not reach the issues presented by the Plaintiff regarding Cotter's alleged actions to influence Mr. Lesher's election of benefits. Even if Cotter had misled him, Mr. Lesher could not have received benefits under any Section of the Plan other than Section 2.5(B) without retiring and reaching the age of 55. He chose not to retire and, tragically, he only attained the age of 54 years and 7 months.

I R. tab 12, at 10–11. The district court thus granted defendant's motion for summary judgment, precipitating plaintiff's appeal.

## II

On appeal from a summary judgment order, "we will affirm if we determine that, viewing the facts in the light most favorable to the opposing party, there is no genuine issue of material fact in dispute and the moving party should prevail as a matter of law." *Woolsey v. Marion Lab., Inc.,* 934 F.2d 1452, 1456 (10th Cir.1991). Furthermore, we may affirm the district court on "dispositive, indisputable, alternative grounds" in the record and raised on appeal. *Colorado Property Acquisitions, Inc. v. United States,* 894 F.2d 1173, 1175 n. 5 (10th Cir.1990); *see also Lindsey v. Dayton–Hudson Corp.,* 592 F.2d 1118, 1124 (10th Cir.) (affirming summary judgment when facts were sufficiently clear to permit a determination), *cert. denied,* 444

U.S. 856, 100 S.Ct. 116, 62 L.Ed.2d 75 (1979).

Plaintiff asserts that absent defendant's misrepresentations, Lesher would have retired under the Plan's disability retirement and would have chosen a joint and survivor annuity option. Plaintiff argues that because of the misrepresentations the Plan is estopped from relying on Lesher's failure to retire and apply for benefits. Defendant counters that this factual dispute is immaterial because even had Lesher applied for disability retirement benefits the Plan did not provide for a joint and survivor annuity under the disability retirement option. We consider this defense, which also requires us to review the retirement committee's interpretation of the Plan.

The Plan contains several provisions that address retirement benefits and payment options. Section 2.4, entitled "disability retirement and retirement income," provides in pertinent part:

> (A) *Definition:* A participant may retire from the service of the Company under the plan if he becomes totally and permanently disabled, as defined in Paragraph (B) of this Section 2.4, on or after the effective date of the plan but prior to his normal retirement date. Such retirement from the service of the Company shall herein be referred to as disability retirement.
>
> . . . .
>
> (E) *Disability Retirement Income:* Subject to the provisions of Section 2.2(C), the benefit payable to a participant who has both attained the age or (sic) 40 years and completed 10 years of service and who retires from the service of the Company due to total and permanent disability is a monthly income, payable for life thereafter, in an amount computed in the same manner as if he had taken early retirement under Section 2.3(B).

I R. tab 6, att. 1, at 17–18; *see also id.* at 15–16 (Section 2.3(B) providing computation formula for early retirement income). Section 2.2(C) provides:

> (C) *Joint Survivor Payment:* If a participant is married on the date his monthly retirement income payments commence, he shall be deemed to have made a valid election to receive payments under Option 2 of Section 2.6 unless at least two months prior to the date his monthly retirement income paymets (sic) are to commence, after receiving a written explanation of the effect of such an election at least 90 days prior to the date his monthly retirement income payments are to commence, a participant elects to have his payments paid to him as though no such election had been made under Section 2.6. A participant may subsequently, but before his monthly retirement income payments commence, revoke his election or deemed election under this Section 2.2(C).

*Id.* at 14 (emphasis omitted).

Plaintiff's argument is that Section 2.4 is expressly subject to Section 2.2(C), and that Section 2.2(C) addresses the deemed election of a joint survivor payment (option 2 of Section 2.6) by a married participant; thus, the Plan clearly provides for a choice of a joint and survivor annuity for participants who take disability retirement income. Defendant's counterargument is that Section 2.6, not Section 2.2(C), creates the right to a joint and survivor annuity. Section 2.6 of the Plan provides:

OPTIONAL FORMS OF RETIREMENT INCOME

> In lieu of the amount and form of retirement income payable in the event of normal retirement, early retirement or termination of service as specified in Sections 2.2, 2.3, and 2.5(A) hereof, a participant, or a terminated participant as defined in Section 2.5(A) hereof (unless an election is deemed to have been made as heretofore provided), upon written request to the retirement committee and subject to the approval of the retirement committee, may elect to receive a retirement income or benefit commencing on the date specified in Section 2.2, 2.3, 2.5(A), whichever is applicable, of equivalent actuarial value payable in accordance with one of the following options:
>
> . . . .
>
> *Option 2:* A retirement income of modified monthly amount, payable to the par-

ticipant during the joint lifetime of the participant and a joint pensioner designated by him, and following the death of either of them, ⅔ of such monthly amount payable to the survivor for the lifetime of the survivor.

I R. tab 6, att. 1, at 25–26 (emphasis omitted).

Defendant asserts that option 2 of Section 2.6 is the only provision of the Plan creating a right to choose a joint and survivor annuity, and that option 2 is available only under the three circumstances set forth in Section 2.6: (1) normal retirement, (2) early retirement, or (3) termination of services as set forth in Section 2.5(A); it does not mention disability retirement under 2.4. Therefore, the argument is that the Plan does not provide a right to elect a joint and survivor annuity for a participant choosing disability retirement. Defendant dismisses the reference in the Section 2.4 disability retirement income provision to Section 2.2(C) as not creating any independent right to opt for a joint and survivor annuity. Defendant contends Section 2.2(C) is merely a procedural section and only Section 2.6 creates the substantive rights under the Plan to a retirement income in the form of a joint and survivor annuity.

A careful reading of the Plan and the briefs has convinced us that there is a conflict between Section 2.4 and Section 2.6. This conflict creates an ambiguity that the retirement committee resolved to exclude a joint and survivor annuity option

for disability retirement. Before its amendment in 1984, after Lesher's death, ERISA did not require that an employee taking disability retirement before age fifty-five be afforded the option of a joint and survivor annuity. *See* Employee Retirement Income Security Act of 1974, Pub.L. No. 93–406, § 205(a)–(b), 88 Stat. 829, 862–63.[1] Thus, ERISA did not require that the retirement committee construe the Plan to provide a joint and survivor annuity option.

### III

■ The standard of review we apply in determining whether the retirement committee improperly denied plaintiff's claims for disability retirement benefits under the Plan has been addressed by the Supreme Court: "[A] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Thus, if the Plan gives the retirement committee "discretion ... to construe 'doubtful' provisions of the plan itself," *De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1186 (4th Cir.1989), the committee's decision must be upheld unless it was "arbitrary and capricious, not supported by substantial evidence or erroneous on a question of law." *Woolsey v. Marion Lab., Inc.*, 934 F.2d 1452, 1457

1. Pub.L. No. 93–406, § 205(a)–(b) reads as follows:

### JOINT AND SURVIVOR ANNUITY REQUIREMENT

Sec. 205. (a) If a pension plan provides for the payment of benefits in the form of an annuity, such plan shall provide for the payment of annuity benefits in a form having the effect of a qualified joint and survivor annuity.

(b) In the case of a plan which provides for the payment of benefits before the normal retirement age as defined in section 3(24), the plan is not required to provide for the payment of annuity benefits in a form having the effect of a qualified joint and survivor annuity during the period beginning on the date on

which the employee enters into the plan as a participant and ending on the later of—

(1) the date the employee reaches the earliest retirement age, or

(2) the first day of the 120th month beginning before the date on which the employee reaches normal retirement age.

The "normal retirement age" under the Cotter Plan is age 65. I R. tab 6, att. 1, at 13. Therefore, under § 205(b)(2), ERISA required a joint and survivor annuity under the Plan only once the employee reached age 55. The vesting provisions were changed by Pub.L. No. 98–397, § 203(a), 98 Stat. 1426, 1440 (1984) (codified at 26 U.S.C. § 401(a)(11)), to require offering a joint and survivor annuity in essentially all retirement circumstances for plan years beginning after December 31, 1984.

(10th Cir.1991); *see also Naugle v. O'Connell,* 833 F.2d 1391, 1393–94 (10th Cir.1987) (trustee's decision "neither arbitrary nor capricious if it is based on substantial evidence and is not the result of a mistake of law").

Section 5.5 of the Plan provides:

In order to effectuate the purposes of the plan, the retirement committee shall have the power to construe the plan, to supply any omissions therein, to reconcile and correct any errors or inconsistencies, and to make equitable adjustments for any mistakes or errors made in the administration of the plan, and all such actions or determinations made by the retirement committee in good faith shall not be subject to review by anyone.

I R. tab 6, att. 1, at 51. This provision clearly vests the broadest possible discretion in the retirement committee to construe doubtful provisions.[2] Thus, we must uphold the committee's construction of ambiguous provisions if it is reasonable and made in good faith. *See De Nobel,* 885 F.2d at 1186–88.

██ As we discussed earlier, the two most relevant provisions of the Plan, Sections 2.4 and 2.6, are in conflict. The retirement committee construed Section 2.2(C) as only a procedural provision, and declared that only Section 2.6 provides substantive rights to a joint and survivor option. The committee's resolution does construe the reference in Section 2.4 to Section 2.2(C) as surplusage. Thus, plaintiff's argument that the specific reference in Section 2.4 to Section 2.2(C) should be given some effect may seem more reasonable; but that does not explain why Section 2.6 omits any reference to disability retirement. Each of the two constructions of the unclear Plan provisions are rational; and we must defer to the retirement committee's reasonable construction absent administrative bias. *See Woolsey,* 934 F.2d at 1459 (whether administrator or fiduciary acted under conflict of interest is relevant to determining whether there was abuse of discretion); *De Nobel,* 885 F.2d at 1191 (same). We have reviewed the record and find no evidence of a conflict of interest or of bad faith. We therefore uphold the retirement committee's determination that Lesher, although eligible for disability retirement, was not entitled to choose a joint and survivor annuity.[3]

AFFIRMED.

2. The phrase "shall not be subject to review by anyone" may not be enforceable, but it certainly indicates an intention to vest as much discretion as possible in the retirement committee.

3. Plaintiff's other arguments on appeal thus are moot because neither Lesher nor plaintiff suffered damages due to Lesher's failure to apply for disability retirement if plaintiff was ineligible for a survivor annuity. As defendant accurately points out:

From August 25, 1982 until the long-term disability insurance payments commenced on June 13, 1983, Lesher received his full monthly salary of $3,332 because of accumulated vacation and sick pay to which he was entitled. He could not have received either disability retirement or long-term disability insurance while receiving full pay as a Cotter employee. Moreover, disability retirement would have resulted in elimination of certain medical insurance coverage.

Commencing on June 13, 1983, Lesher received monthly payments under the long-term disability insurance coverage provided by Cotter. Once the social security benefits he received were deducted from the long-term disability insurance benefits, the net amount of the payments was $1,692.40 per month. If Lesher had retired under Section 2.4 of the Plan, he would have received only $343.83 per month. Although it is doubtful he could have received long-term disability insurance while receiving disability retirement income under the Plan, the $1,692.40 would have been further reduced by $343.83 per month in any event. Accordingly, Lesher did not suffer any damages by failing to apply for disability retirement benefits.

Appellee's Brief at 14–15 (citations omitted).