**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 8 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

EDWARD G. TRUJILLO,

Plaintiff-Appellant,

v.

CYPRUS AMAX MINERALS
COMPANY RETIREMENT PLAN
COMMITTEE and CYPRUS AMAX
MINERALS COMPANY
RETIREMENT PLAN,

Defendants-Appellees.

No. 99-1008

---

APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 96-S-2130)

---

Ralph Ogden of Wilcox & Ogden, P.C., Denver, Colorado, for the appellant.

David R. Hammond (Janet A. Savage, with him on the brief) of Davis, Graham & Stubbs LLP, Denver, Colorado, for the appellees.

---

Before **BRISCOE** and **PORFILIO,** Circuit Judges, and **ROGERS,** Senior District Judge. [1]

---

[1] The Honorable Richard D. Rogers, Senior United States District Judge for the District of Kansas, sitting by designation.

**BRISCOE**, Circuit Judge.

Plaintiff Edward Trujillo, a former employee of Cyprus Amax Minerals Company (Amax), filed suit under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, challenging a decision by defendant Cyprus Amax Minerals Company Retirement Plan Committee (the Committee) to reduce Trujillo's disability retirement benefits by the total amount of a workers' compensation settlement without paying a pro rata share of attorney fees incurred in obtaining the settlement. The district court granted summary judgment in favor of the Committee and Trujillo appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

Trujillo began working for Amax in 1976 as a hard rock miner. He suffered work-related injuries to his arms in March 1985, and a work-related injury to his lower back on November 21, 1985. Although Trujillo continued working on and off until 1991, the injuries ultimately rendered him totally and permanently disabled. On July 31, 1991, he was discharged from his employment and instructed by Amax to apply for retirement-disability benefits under Amax's Henderson Mine Non-Contributory Retirement Income Plan (the Plan).

Trujillo sought, and eventually received, workers' compensation benefits

2

as a result of his 1985 injuries. On December 13, 1993, he settled all of his outstanding workers' compensation claims for a lump sum payment of $45,000 and monthly payments of $372.45 for the remainder of his life. Out of the $45,000 lump sum payment, Trujillo paid his attorneys $7,000 in fees and reimbursed them $2,826.99 for costs advanced on his behalf.

Trujillo also sought benefits under the Plan. On January 31, 1995, the coordinator of the Plan sent Trujillo a letter outlining the specific benefits he would receive. The letter indicated that his benefits would be reduced, in part, by the total amount of his workers' compensation benefits. On July 17, 1995, Trujillo appealed the determination of his benefits, arguing the Plan, as a beneficiary of the settlement of Trujillo's workers' compensation claims, should pay a proportionate share of the attorney fees incurred in obtaining the settlement, thus reducing the amount of the reduction. On November 14, 1995, the Director of the Committee rejected Trujillo's argument that the Plan was responsible for any portion of his attorney fees:

> You assert that the Plan must assume a portion of the responsibility for attorneys' fees, which were incurred in obtaining the settlement of [your] workers' compensation benefits. The Plan document does not authorize the payment of the attorneys' fees you seek.
> You cite two Colorado state court cases in support of your claim for attorneys' fees. As you have acknowledged, the Plan is governed by the federal Employee Retirement Income Security Act of 1974, as amended ("ERISA"). ERISA is a comprehensive statute and contains provisions that make it clear that ERISA preempts any state regulation which relates to an employee benefit plan. ERISA

3

§ 514(a). We believe that the Colorado state case law you rely upon as authority for your position does not govern the operation of the Plan because it is preempted by ERISA. Under ERISA, the Plan administrator is required to discharge its duties with regard to the Plan in accordance with the terms of the Plan document. Thus, this portion of [your] claim is denied.

App. at 126.

On December 8, 1995, Trujillo appealed the Director's decision to the entire Committee. The Committee, on February 6, 1996, issued a letter addressed to Trujillo's counsel affirming the Director's decision. In pertinent part, that letter provided:

> With respect to the aspect of the appeal relating to any apportionment of attorneys' fees incurred by Claimant in obtaining the workers' compensation settlement, you stated that common law equitable principles of unjust enrichment support the claim. Again, we are constrained by the plain terms of the Plan, which do not provide for reimbursement of attorneys' fees under these circumstances. See Plan Section 9.4(b). Accordingly, we . . . uphold the [Director's] decision . . . and deny the instant appeal.
>
> It is well settled that common law claims premised on equitable theories of recovery are preempted by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1144(a) (ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . ."). This provision has been construed by the courts broadly to preempt any and all state law claims for benefits, particularly where, as here, the claim would in some way modify the written terms of an employee benefit plan. See, for example, Straub v. Western Union Telegraph Co., 851 F.2d 1262 (10th Cir. 1988) (ERISA preempts state law claims premised on common law doctrines of estoppel).
>
> As stated above, the Claimant's assertion that he is entitled to an apportionment of attorneys' fees with the Plan is contrary to the terms of the Plan. The Committee, therefore, respectfully disagrees

4

with your assertion that cases applying state common law equitable theories of recovery . . . are applicable to an ERISA employee benefit plan. Any such alleged legal bases for recovery are preempted by ERISA.

In your December 8, 1995 letter, you also offer the representation that the amount of attorneys' fees is not properly offset because it was not actually received by the Claimant . . . , but rather was deposited in a trust account maintained by your law firm on behalf of the Claimant. You correctly note that the Plan provides for offset only for amounts actually paid to a participant. Plan Section 9.4(b)(2).

The fact that you or your law firm may have elected to deposit the settlement check in a trust account and to withdraw some portion of the settlement prior to releasing the funds to Claimant does not change the fact that the full settlement was payable to and actually paid to Claimant. The Stipulation for Full and Final Settlement and Release of All Claims executed by the Claimant specifically states that the insurer agreed to "pay to Claimant" the total amount of the settlement. Moreover, it is reasonable for the Committee to assume (and Claimant has presented no evidence to the contrary) that any subsequent release of the settlement proceeds paid to Claimant, for example to his legal counsel, was with the full knowledge and consent of Claimant. The Committee believes that, to interpret the Plan provisions as urged by Claimant, such that any subsequent division of settlement proceeds between a participant and other parties reduces the actual amount of proceeds paid to the participant, is neither an accurate statement of the events that transpired nor consistent with the plain language of Plan Section 9.4(b)(2). Accordingly, this aspect of the appeal also is denied.

Id. at 133-34.

After receiving the Committee's letter, Trujillo filed this action in the District Court for the City and County of Denver. Defendants removed the case to federal district court. The parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of defendants, concluding

they did not act arbitrarily or capriciously in refusing to reduce the amount of the benefit reduction to account for a proportionate share of the attorneys' fees expended by Trujillo in obtaining his workers' compensation settlement.

## II.

Although the district court granted summary judgment in favor of defendants, the underlying facts were uncontroverted and the district court's decision hinged solely on its determination that defendants' decision to deny relief to Trujillo was neither arbitrary nor capricious. Because this determination involved a legal conclusion, our "review of the district court's decision, although not the underlying administrator's decision, is plenary." Sandoval v. Aetna Life and Cas. Ins. Co., 967 F.2d 377, 380 (10th Cir. 1992).

"A court reviewing a challenge to a denial of employee benefits under 29 U.S.C. § 1132(a)(1)(B) applies an 'arbitrary and capricious' standard to a plan administrator's actions if the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms." Charter Canyon Treatment Ctr. v. Pool Co., 153 F.3d 1132, 1135 (10th Cir. 1998) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)); see also Millensifer v. Retirement Plan for Salaried Employees of Cotter Corp., 968 F.2d 1005, 1009 (10th Cir. 1992) ("[I]f the Plan gives the retirement committee discretion to construe doubtful provisions of the plan itself, the committee's

6

decision must be upheld unless it was arbitrary and capricious, not supported by substantial evidence or erroneous on a question of law.") (internal quotations omitted). Here, the parties agree that the Plan gives the Committee such discretionary authority, see App. at 56-57 (indicating the Committee "shall have sole discretion in carrying out its responsibilities," and "has full discretion to deny or grant a claim in whole or in part"), and that the standard of review is whether the Committee's determination was arbitrary and capricious. Under this standard of review, we will not set aside a benefit committee's decision if it was based on a reasonable interpretation of the plan's terms and was made in good faith. See Jones v. Kodak Med. Assistance Plan, 169 F.3d 1287, 1292 (10th Cir. 1999); Averhart v. U.S. West Management Pension Plan, 46 F.3d 1480, 1485 (10th Cir. 1994).

The Committee's decision, and hence this appeal, center around Section 9.4 of the Plan, entitled "Disability Retirement Benefits," which provides:

> The Disability Retirement Benefits payable to any Member shall be reduced by the amount of any worker's compensation benefits (except fixed statutory payment for the loss of any bodily member) payable to him with respect to his disability; provided that deduction for all such benefits shall be made only with respect to the period in which such benefits (A) are actually paid to such Member, and (B) have not been deducted from a disability insurance benefit payable to him under the Federal Insurance Contributions Act, as now in effect or hereafter amended. In the case of lump sum settlements under worker's compensation, the lump sum shall be divided by the weekly payment to which he was entitled under worker's compensation in order to determine the period with respect to which worker's

7

compensation benefits are payable for the purpose of this Section 9.4.

App. at 74 (Section 9.4(b)(2) of the Plan).[2]

Trujillo contends the Committee's interpretation of Section 9.4 was arbitrary and capricious because it reduced his benefits by amounts which he did not receive and which were not payable to him. More specifically, Trujillo argues that "[a]ttorneys fees and expenses incurred in obtaining workers' compensation disability benefits . . . are amounts due and payable by the injured worker to his attorney and must be paid from the worker's lump sum settlement before the worker is paid anything." Aplt.'s Opening Br. at 19. Thus, Trujillo argues, "only the net settlement, i.e., the settlement amount minus fees and expenses, is 'payable' to the worker." Id.

Although Trujillo's argument is not without appeal, we are unable to conclude the Committee acted arbitrarily and capriciously when it adopted an interpretation different from the one espoused by Trujillo. The Plan does not define the word "payable." According to Black's Law Dictionary, "payable" means "[c]apable of being paid; suitable to be paid; admitting or demanding

---

[2] The summary plan description, which Amax distributed to its employees, likewise provided: "Your Plan benefit is reduced by amounts you may receive from:
Workers' Compensation (except payments for loss of any bodily member)." App. at 140.

8

payment; justly due; legally enforceable." Black's Law Dictionary 1128 (6th ed. 1990).[3] Analyzing the language of the Plan in light of these definitions, we believe the phrase "worker's compensation benefits . . . payable to him with respect to his disability" can reasonably be interpreted to encompass any amounts "capable of being paid," "justly due," or "legally enforceable" that arise out of a worker's disability. In turn, the workers' compensation settlement agreement negotiated by Trujillo provided, in part, that "[a]ll sums set forth herein constitute damages on account of personal injuries and sickness, within the meaning of Section 104(a)(1) of the Internal Revenue Code of 1986, as amended." App. at 167. Because the statute cited in the settlement agreement, 26 U.S.C. § 104(a)(1) of the Internal Revenue Code, excludes from gross income "amounts received from workmen's compensation acts as compensation for personal injuries or sickness," the settlement agreement effectively indicated that all of the amounts set forth therein, i.e., the $45,000 lump sum payment and the $372.45 monthly payments, constituted "compensatory damages" for Trujillo's injuries. See

---

[3] In his appellate brief, Trujillo suggests that because his workers' compensation benefits were paid pursuant to Colorado law, "the question of whether the attorneys fees and expenses were either 'payable to' or 'received' by him must be decided under state law." Trujillo's Opening Br. at 18. He provides no authority in support of this proposition. For the reasons discussed above, the controlling question is whether the Committee's interpretation of the Plan was arbitrary or capricious; thus, the two Colorado cases cited by Trujillo in his brief, neither of which are ERISA cases, are of little value.

generally <u>Reese v. United States</u>, 24 F.3d 228, 231 (Fed. Cir. 1994) (indicating that 26 U.S.C. § 104 encompasses only compensatory damages, i.e., damages for "the replacement of losses resulting from injury or sickness"). There was no mention of the amount of Trujillo's attorneys' fees in the settlement agreement. Thus, as in most attorney fee arrangements, it appears that Trujillo agreed to pay fees out of the total damage award he received from defendants. The fact that he agreed to do so, however, did not prevent the Committee, in determining the benefits due under the Plan, from deducting the total amount payable to him under the settlement agreement.

Trujillo offers two policy-based arguments presumably aimed at persuading us to overturn the Committee's decision and effectively rewrite the language of the Plan. First, he points out that the Committee's decision in effect required him to pay the cost of reducing his own benefits under the Plan. Second, he argues the Committee's decision will create irreconcilable conflicts between workers' compensation attorneys and their clients and "make it impossible for injured workers to obtain adequate, conflict-free representation." Aplt.'s Opening Br. at 21. Notably, however, Trujillo has not cited any cases, and our independent research has not produced any, that would allow such policy arguments to trump

10

the Committee's reasonable interpretation of the Plan language.[4] See Pitcher v. Principal Mut. Life Ins. Co., 93 F.3d 407, 411 (7th Cir. 1996) (noting that interpretation of ERISA health insurance contract requires court to look to the plain language of the contract, rather than public policy); Hardester v. Lincoln Nat'l Life Ins. Co., 33 F.3d 330, 336 (4th Cir. 1994) (same).

Finally, Trujillo suggests we should invoke the doctrine of unjust enrichment to preclude the Committee from offsetting the entire amount of the workers' compensation settlement without paying a pro rata share of his attorneys' fees. In Member Services Life Insurance Co. v. American National Bank and Trust Co., 130 F.3d 950, 957 (10th Cir. 1997), cert. denied, 523 U.S. 1139 (1998), we placed strict limits on the use of the doctrine of unjust enrichment in ERISA cases. Specifically, we held that the doctrine can be utilized only when it does not "override a contractual plan provision," and where its application "'would be consistent with ERISA's scheme and further its purposes.'" Id. (quoting Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 280 (2d Cir. 1992)).

Given our holding in Member Services, application of the doctrine of unjust

---

4 Because the appendix does not include the parties' summary judgment motions, it is unclear if Trujillo presented all of these arguments to the district court. See Farmers Ins. Co. v. Hubbard, 869 F.2d 565, 570 (10th Cir. 1989) ("This court will generally not address issues that were not considered and ruled upon by the district court.").

11

enrichment would clearly be improper in this case. Aside from the fact that ERISA says nothing about the issue raised by Trujillo, application of the doctrine of unjust enrichment would effectively rewrite the Plan and thereby violate "a primary purpose of ERISA," which "is to ensure the integrity and primacy of the written plans." Health Cost Controls v. Isbell, 139 F.3d 1070, 1072 (6th Cir. 1997) (holding that ERISA plan's right to reimbursement for medical benefits was not subject to equitable reduction for proportional share of participant's legal costs in obtaining third-party recovery); see also Ward v. Wal-Mart Stores, Inc., 1999 WL 801532 at *3-4 (6th Cir. Sept. 30, 1999) (table) (holding that application of unjust enrichment doctrine, relied upon by district court to prevent ERISA plan from obtaining reimbursement for settlement agreement without paying a pro rata share of plaintiffs' attorneys' fees, was improper where plan administrator's interpretation of plan language regarding extent of reimbursement was neither arbitrary nor capricious).

III.

The judgment of the district court is AFFIRMED.

12