F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**DEC 10 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

WILLIE L. WAGNER-HARDING,

Plaintiff-Appellant,

v.

FARMLAND INDUSTRIES INC.
EMPLOYEE RETIREMENT PLAN,

Defendant-Appellee.

No. 01-3085
(D.C. No. 00-CV-1062-JTM)
(D. Kan.)

**ORDER AND JUDGMENT** *

Before **HENRY** , **ANDERSON** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Willie L. Wagner-Harding appeals the district court's entry of summary judgment in favor of defendant Farmland Industries Inc. Employee Retirement Plan on her claim for disability benefits under the Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. § 1132(a)(1)(B). Because Ms. Wagner-Harding failed to file a response to defendant's motion for summary judgment, the district court deemed the facts admitted and the motion uncontroverted under the court's local rule. The court then granted the motion, finding defendant did not act in an arbitrary or capricious manner in denying her benefits. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. Background

Ms. Wagner-Harding was hired by Farmland Industries (Farmland) in 1976 to work in its Coffeyville, Kansas, petroleum refinery. On September 4, 1981, she injured her back at work and was hospitalized. She attempted to come back to work on September 7, 1981, but left due to pain and never returned. Nevertheless, Ms. Wagner-Harding technically remained an employee of Farmland and was eventually placed on job-related medical leave-of-absence status.

Soon after the accident, she filed a claim with the State of Kansas Division of Workers' Compensation. On March 22, 1985, the assistant director of that division determined Ms. Wagner-Harding had become temporarily, totally

disabled from September 7, 1981, due to her injury aggravating a pre-existing degenerative disc disease, combined with anxiety and depression. Over time, Farmland paid Ms. Wagner-Harding $75,000, the statutory maximum, to compensate this claim.

Ms. Wagner-Harding made a separate claim for supplemental security income and disability benefits with the Social Security Administration. On November 4, 1983, an administrative law judge determined that, although she was unable to perform her past relevant work, Ms. Wagner-Harding was not disabled, as defined by the Social Security Act, because she was able to perform a full range of sedentary work in other jobs that exist in the national economy. On appeal, however, the district court found that she could not perform sedentary work on a reasonably regular basis and consequently awarded Ms. Wagner-Harding benefits from September 7, 1981. Both the workers' compensation and the social security determinations were based, in part, on examinations by physicians whose opinions varied as to the extent of her disability.

In 1990, Ms. Wagner-Harding obtained letters from two doctors authorizing her to return to work, with certain limitations. She applied for a position as gate guard in Farmland's refinery, but during the application process she aggravated an injury to her wrists and withdrew herself from consideration.

While working at Farmland from 1976 to 1981, Ms. Wagner-Harding had been a participant in the company's Employee Retirement Plan (Plan). On December 3, 1993, she filed an application for disability benefits under the Plan, claiming her back injury had left her permanently disabled since September 7, 1981. The Plan that was in effect on the date of her injury contained no time limitation for filing disability claims, so the Retirement Committee (the Plan's fiduciary) agreed to hear the claim and the administrator assembled evidence for the record. After reviewing that record, the Retirement Committee denied Ms. Wagner-Harding's request for benefits on September 19, 1995. She appealed to the Retirement Committee, through counsel, submitting additional evidence of her claimed disability. That appeal was denied in February of 1996.

On February 11, 2000, Ms. Wagner-Harding filed suit in district court against the defendant alleging it violated 29 U.S.C. § 1132(a)(1)(B) in denying her claim for benefits. That complaint was filed through counsel, but her counsel ultimately withdrew, leaving her status as pro se. After the defendant filed for summary judgment, Ms. Wagner-Harding missed an initial deadline and two extensions of time to file a response. After her last extension expired, she attempted to file numerous unbound records and personal notes and a document titled "Memorandum in Support of Plaintiff's Motion for Summary Judgment." These items were not accepted for filing because they were untimely and

improperly formatted, but the district court reviewed them for purposes of defendant's summary judgment motion and found them to contain nothing addressing that motion in any meaningful way.

Because of the filing deficiencies, the district court deemed the facts presented in the motion for summary judgment as admitted and the motion uncontroverted under D. Kan. Rule 56.1. [1] Accordingly, after examining the administrative record and Ms. Wagner-Harding's proffered documents, the district court granted the motion, finding there was no genuine issue of fact as to whether defendant, through its Retirement Committee, acted in an arbitrary and capricious manner in denying the benefits.

Ms. Wagner-Harding has appealed pro se, and has attempted to file with this court a notebook containing numerous records and personal notes, most of which were reviewed by the district court. This notebook was received but not filed by this court, and her accompanying letter has been construed as a motion to supplement the record.

---

[1]     District of Kansas Local Rule 56.1 states, "[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."

## II. The District Court's Decision to Deem the Facts Admitted

We first consider the district court's decision to deem all of the facts in defendant's motion as admitted. As we noted above, the court imposed this sanction [2] on Ms. Wagner-Harding for her failure to file a timely response to the summary judgment motion. Such a sanction is a type of evidentiary ruling, and, consequently, we review it for an abuse of discretion. *Durtsche v. Am. Colloid Co.*, 958 F.2d 1007, 1011 (10th Cir. 1992) (trial court's evidentiary rulings reviewed for abuse of discretion). *See also Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 894 (10th Cir. 1997) (trial court's exclusion of evidence at summary judgment stage reviewed for abuse of discretion). An abuse of discretion will be found only where the trial court makes "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *United States v. Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir. 1991) (quotation omitted).

We see nothing arbitrary, whimsical or unreasonable about the district court's ruling here. After defendant filed the motion on December 1, 2000, Ms. Wagner-Harding was given twenty-five days to respond. When she did not respond, the court allowed her an extension until February 9, 2001, advising her that no further extensions would be allowed. Nevertheless, on February 9, the

---

[2] The district court itself has labeled this part of D. Kan. R. 56.1 a "sanction." *See Joshua W. v. Bd. of Educ. of Wichita Pub. Schs.*, 13 F. Supp. 2d 1199, 1205 (D. Kan. 1998).

court gave Ms. Wagner-Harding an additional seven days to respond, until noon on February 16, and told her the deadline would be absolutely final. When Ms. Wagner-Harding did attempt to file a response, it was late and improperly formatted. Nevertheless, although it was not required to do so, the district court reviewed her material and found it contained nothing that controverted any of the facts contained in defendant's original motion. We have also reviewed all of Ms. Wagner-Harding's documents, and we note that defendant's recitation of the facts at the summary judgment phase was highly inclusive and complete, containing reference to facts supporting its position, but also reference to evidence that tended to show Ms. Wagner-Harding had long suffered from one or more disabilities. Under these circumstances, we conclude that the district court did not abuse its discretion in deeming the facts in defendant's motion as admitted.

### III.  The District Court's Grant of Summary Judgment

Next we turn to the grant of summary judgment itself. While its implications may be dire to an opposing party, a district court's decision to deem facts as admitted in a motion for summary judgment does not relieve the movant of its initial burden of producing evidence showing the absence of a genuine fact under Rule 56.  *See Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 856 (10th Cir. 1999) (recognizing this distinction). Likewise, even if an adverse party does not

respond to a motion for summary judgment, the district court must still determine, as the rule requires, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"We review the grant of summary judgment de novo, applying the same standard as did the district court." *Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000). Summary judgment is appropriate against any party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After finding the underlying facts were admitted, the district court decided that defendant's denial of benefits to Ms. Wagner-Harding was neither arbitrary nor capricious. "Because this determination involved a legal conclusion, our 'review of the district court's decision, although not the underlying administrator's decision, is plenary.'" *Trujillo v. Cyprus Amax Minerals Co. Ret. Plan Comm.*, 203 F.3d 733, 736 (10th Cir. 2000) (quoting *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992)).

"In addition to the standards we use to evaluate the district court's order, we must also address the appropriate standard with which the court should review the [defendant's] denial of benefits under the ERISA plan it administers." *Pitman*

*v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1295 (10th Cir. 2000). The

Supreme Court has held that "a denial of benefits challenged under

§ 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan

gives the administrator or fiduciary discretionary authority to determine eligibility

for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v.*

*Bruch*, 489 U.S. 101, 115 (1989). Here, the parties do not dispute that defendant,

as administrator of the Plan, had the discretionary authority to determine

eligibility for benefits or to construe the terms of the Plan. Thus, the de novo

standard is not applicable, and we must uphold defendant's decision to deny

Ms. Wagner-Harding benefits unless it was arbitrary and capricious. *Trujillo*,

203 F.3d at 736. "Under this standard of review, we will not set aside a benefit

committee's decision if it was based on a reasonable interpretation of the plan's

terms and was made in good faith." *Id.* This is a very restrictive standard, and,

coupled with the discretion given the administrator in this particular plan, it is

one which would be difficult for any claimant to overcome. As we have

explained:

> When reviewing under the arbitrary and capricious standard,
> [t]he Administrator['s] decision need not be the only logical one nor
> even the best one. It need only be sufficiently supported by facts
> within [his] knowledge to counter a claim that it was arbitrary or
> capricious. The decision will be upheld unless it is not grounded on
> *any* reasonable basis. The reviewing court need only assure that the
> administrator's decision fall[s] somewhere on a continuum of
> reasonableness – even if on the low end.

*Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (citations and quotations omitted).

In this case, the Plan offers disability benefits if:

> on the basis of medical evidence of [her] condition *within six months of [her] last day worked* satisfactory to the Retirement Committee, [she] is found to be wholly prevented from engaging in any occupation for wage or profit as a result of injury or disease . . . and [she] shall be deemed permanently disabled if, *in the sole opinion of the Retirement Committee*, [she] is likely to remain so totally disabled continuously and permanently.

Aplee. App., Vol. I, at 0020 (emphasis added). The Plan requires proof of disability "in the form of a certificate from a duly licensed physician or physicians *selected by the Retirement Committee* and in such other manner of proof as the Retirement Committee may decide." *Id.* (emphasis added). Thus, Ms. Wagner-Harding faced the difficult burden of proving, twelve years after her accident, that she was totally disabled within six months of September 7, 1981. Likewise, she faced the additional hurdle of proving her disability was continuous and permanent, despite obtaining physician letters permitting her to return to work in 1990.

Given these circumstances, and after thoroughly reviewing the record, we conclude that defendant, through its Retirement Committee, acted reasonably and in good faith. The record reflects that the Committee made every effort to include and consider all of the relevant medical evidence bearing on Ms. Wagner-

-10-

Harding's condition. Still, as noted by the district court, over the years at least six physicians offered their opinions that Ms. Wagner-Harding's injury did not result in a permanent and total disability, as that term was defined in the Plan. While some of the medical evidence reviewed was from Ms. Wagner-Harding's treating physicians, the Retirement Committee was not obligated to use any particular doctor in making its determination. By the very language of the Plan, the Retirement Committee was permitted to select any physician for use in its administrative process. In this case, the Retirement Committee reviewed evidence from Ms. Wagner-Harding's treating physicians and also obtained two independent appraisals of her claimed disability. After its initial determination, the Retirement Committee permitted Ms. Wagner-Harding, through counsel, to present additional evidence that was forwarded to a third physician for independent analysis. Reviewing this evidence, the district court found the Retirement Committee's decision was neither arbitrary nor capricious, and that defendant was entitled to judgment as a matter of law. We agree.

Two matters unnecessarily complicate this case and apparently add to the distress of Ms. Wagner-Harding. First, for whatever reason, Farmland has not technically terminated her and she has remained "on the rolls," albeit in a leave-of-absence status, all these years after her initial injury. However, we emphasize that her ability to obtain disability benefits under the Plan hinged

-11-

solely on her ability to prove a total and permanent disability within six months of her last day actually worked, or September 7, 1981.  Her leave-of-absence status in no way relieved her of that difficult burden.

Second, both the State of Kansas Division of Workers' Compensation and the Social Security Administration have made separate determinations that Ms. Wagner-Harding was disabled from September 7, 1981, as a result of the injury to her back.  But just as these determinations did not preclude Ms. Wagner-Harding from attempting to obtain benefits under the Plan, neither did they compel the Retirement Committee to automatically grant the benefits.  Quite simply, those proceedings are entirely different and separate from a claim under ERISA, with different parties, different evidentiary standards, and different bodies of law governing their outcomes.  *Compare* Farmland's Employee Retirement Plan (August 27, 1979) (defining total disability for purposes of Plan), Aplee. Supp. App. Vol. I, at 0019-20, *with* Kan. Stat. Ann. § 44-510c(b)(2) (1981) (defining "temporary total disability" under workers' compensation statute) *and* 42 U.S.C. § 423(d) (1976) (defining "disability" for purposes of social security disability benefits).  *See also Aldrich v. Boeing Co.*, 146 F.3d 1265, 1268-69 (10th Cir. 1998) (evidence of disability in workers' compensation claim probative, but neither dispositive of the injury nor sufficient to give rise to a genuine issue of material fact for claim under the ADA).

## IV. Conclusion

Our review of this record convinces us that Ms. Wagner-Harding has indeed suffered a great deal of physical and mental anguish over the years, and undoubtedly this proceeding has only added to her distress. Unfortunately, given our very limited standard for reviewing highly discretionary plans such as Farmland's, we are compelled to hold against her. Therefore, because we agree with the district court that the uncontroverted facts show defendant, through its Retirement Committee, did not act in an arbitrary or capricious manner in denying benefits to Ms. Wagner-Harding, we conclude that the court did not err in finding Farmland was entitled to judgment as a matter of law. The judgment of the United States District Court for the District of Kansas is AFFIRMED. Ms. Wagner-Harding's motion to supplement the record is DENIED.

Entered for the Court

Robert H. Henry
Circuit Judge

-13-