**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 27 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CLAY BRONK; MAURINE BURK; MARK
DAMILINI; JACQUELINE ENRIQUEZ;
CHUCK FLETCHER; NATALIE FRANZ;
JOHN GIERKA; RANDOLPH GILMORE;
MARK HAY; KIM JOHNSON; JOHN
KENNEDY; JANE KNUTSON; CAROL
MAJOR; SANDRA MARTINSKIS;
ALFRED MULFORD; TERRY REYES;
ROY R. SALINAS; LARRY SANCHEZ;
LYNN SAXE; JOHN SAXE; LING
SIGSTEDT; STEVEN STOLLMAN;
DONNA SLY; LYDIA THOMAS; ROBERT
TOANNON; FRANK VIGIL; CYNTHIA
VOIGT; COLISSION WELLS; LYNN G.
WULF, individually and as representatives
of a Class,

     Plaintiffs-Appellants,

v.

MOUNTAIN STATES TELEPHONE AND
TELEGRAPH, INC., doing business as U.S.
West Communications, a Colorado
corporation; U.S. WEST, INC., a Colorado
corporation; U.S. WEST, INC.,
EMPLOYEES' BENEFIT COMMITTEE;
U.S. WEST FINE CONTRIBUTIONS PLAN
COMMITTEE; U.S. WEST
COMMUNICATIONS BASE BENEFIT
COMMITTEE,

    Defendants-Appellees.

No. 99-1236

(D.C. No. 93-D-1961)
(D. Colo.)

**ORDER AND JUDGMENT** [*]

---

Before **KELLY** ,[**] **BRISCOE** , and **ALARCON** , Circuit Judges. [***]

---

Plaintiffs filed suit under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., challenging the denial of their request to participate in defendants' employee welfare and pension plans. On the parties' cross-motions for summary judgment, the district court held that plaintiffs were properly excluded from defendants' employee welfare plans, but would be entitled to participate in defendants' pension plans if they could demonstrate they were common-law employees of defendants. Defendants filed an interlocutory appeal challenging the district court's holding regarding the pension plans. This court reversed and remanded for further proceedings. Bronk v. Mountain States Tel. and Tel., Inc., 140 F.3d 1335 (10th Cir. 1998) (Bronk I). On remand, the district court entered judgment in favor of defendants, concluding plaintiffs were not entitled to participate in either the welfare plans or the pension plans. Plaintiffs

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Robert H. McWilliams, Senior Circuit Judge, has recused.

[***] The Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

now appeal from that judgment. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I.

Plaintiffs are twenty-nine individuals who, at various times between January 1984 and June 1991, performed services for defendant US West, Inc. (US West) and its wholly-owned subsidiary Mountain States Telephone and Telegraph, Inc. (Mountain States). Plaintiffs were not hired directly by Mountain States or US West, but instead were hired by various leasing companies who, in turn, entered into leasing contracts with US West and Mountain States.[1] The leasing contracts typically provided that the leasing company was the "employer" of the leased workers and that the workers were considered to be employees only of the leasing company. Bronk I, 140 F.3d at 1337.

During this period of time, US West had in place various employee welfare[2] and pension[3] plans. It is uncontroverted that all of these plans had some type of

---

[1] For example, plaintiff Clay Bronk, working through a leasing company called The Temporary Market, performed services for US West between June 27, 1988, and May 5, 1991. West did not pay a salary directly to Bronk. Instead, US West paid a fee to The Temporary Market, who, after retaining a portion of the fee, paid Bronk for his services.

[2] The employee welfare plans include the US West Health Care Plan (Health Plan), the US West Group Life Insurance Plan (Life Plan), and the US West Sickness and Accident Disability Benefit Plan (Disability Plan).

[3] The pension plans include the US West Pension Plan (Pension Plan), the
(continued...)

3

eligibility requirement for participation. Although the specific language of the plans varied, the pension plans generally required an individual to be an employee in the "active service" of, and receive a regular and stated compensation from, US West or one of its subsidiaries. Appellants' App. at 64-66 (discussing specific eligibility requirements of each pension plan). Similarly, the welfare plans generally required an individual to be classified as a "regular employee" according to the payroll records of US West or one of its subsidiaries. Id. at 66-67 (discussing specific eligibility requirements of each welfare plan).

In December 1990, and June and July 1991, plaintiffs filed administrative claims seeking to participate in and receive benefits under the various employee welfare and pension plans provided by US West to its "regular employees." Plaintiffs claimed they performed the same or similar functions as US West's regular employees and were therefore entitled to participate in the plans. Plaintiffs' claims were initially denied by US West's Communications Base Benefits Committee (BBC), which had the delegated authority to initially review claims for benefits under the various plans. Plaintiffs appealed the BBC's decision to US West's Employee Benefit Committee (EBC). The EBC denied the appeal, concluding that plaintiffs were not "regular employees" of US West or its

---

[3](...continued)
US West Savings & Security Plan/ESOP (ESOP), and the US West Payroll Stock Ownership Plan (PAYSOP).

subsidiaries.[4]

Plaintiffs filed this action on September 17, 1993, asserting they had been wrongfully denied participation in US West's plans and requesting that defendants "be enjoined from refusing to allow [them] to participate in The Plans." Appellants' App. at 9. After engaging in limited discovery, the parties filed cross-motions for summary judgment. Plaintiffs asserted three related arguments: (1) that the term "employee," as used in the various plans, should be defined to mean a person who is a common-law employee (and thus any express requirements set forth in the plans for determining who was an employee should be ignored); (2) because each plaintiff satisfied the common-law definition of the term "employee," he or she should be considered eligible to participate in the various plans, notwithstanding the fact that most of the plans expressly required that an employee receive a regular compensation from US West or one of its subsidiaries; and (3) in any event, each plaintiff satisfied the eligibility requirement because he or she received regular compensation from US West or one of its subsidiaries, albeit primarily through the conduit of one of the leasing

---

[4] Each of the individual plans had slightly different requirements for participation. It appears, however, that all of the plans (except for possibly the ESOP) essentially required an individual to be an "employee" of US West and to have received regular compensation from US West or one of its subsidiaries. It is uncontroverted that plaintiffs were not maintained on US West's official service records and did not receive salaries from US West or its subsidiaries.

5

companies.

The district court granted defendants' motion for summary judgment and denied plaintiffs' motion for summary judgment with respect to the employee welfare plans. With respect to the pension plans, the district court concluded they were subject to ERISA's "minimum participation, vesting and funding requirements . . . regardless of the language of the plan," and that "these minimum standards require[d] the inclusion in the case at hand of leased employees who meet the definition of common law employees under law." Id. at 455-56. Because, however, it was unable to determine from the record whether plaintiffs satisfied the common-law definition of the term "employee," the district court ordered supplemental briefing on the issue and delayed a final ruling on this aspect of the motions for summary judgment.

Pursuant to the defendants' request, the district court certified for interlocutory appeal the portion of its summary judgment ruling pertaining to the pension plans. More specifically, the district court certified for interlocutory appeal "the issues of (1) whether the minimum participation, vesting and funding requirements of ERISA must be complied with by the plan administrator, regardless of the language of the plan, and (2) whether these minimum standards require the inclusion of leased employees who meet the definition of common law employee." Id. at 496-97. This court subsequently granted defendants permission

to file an interlocutory appeal.

On appeal, this court reversed the district court's decision regarding plaintiffs' entitlement to benefits under the pension plans. In doing so, this court held that "ERISA does not prohibit an employer from distinguishing between groups or categories of employees, providing benefits for some but not for others." Bronk I, 140 F.3d at 1338. More specifically, the court emphasized, "an employer need not include in its pension plans all employees who meet the test of common law employees." Id. This court further rejected the district court's conclusion that ERISA implicitly incorporates Internal Revenue Code provisions and accompanying Treasury regulations pertaining to tax-qualification for employer-provided pension plans (which, in pertinent part, contain minimum age and service requirements for participation in a qualified plan, and which treat, for tax qualification purposes, leased employees as employees of the entity to whom they provide services). In short, the court concluded that "the tax-qualification provisions of the [Internal Revenue] Code do not rewrite pension plans under ERISA . . . to mandate inclusion of employees, leased or otherwise, whom the plans have permissibly excluded." Id. at 1339-40. Finally, although this court acknowledged that pension plans could expressly provide for compliance with all relevant ERISA and Internal Revenue Code provisions, it concluded that plaintiffs had failed to demonstrate that the plans at issue contained any such provision:

At oral argument, the [Plaintiffs'] counsel argued that U.S. WEST's pension plans contained . . . language requiring the plans to comply with all Internal Revenue Code and Treasury regulations, as well as ERISA. US WEST's counsel vigorously denied that. The document in the record to which the [Plaintiffs'] counsel refers us as supporting his argument does not demonstrate that the plans here included any obligation, explicit or otherwise, to maintain tax-qualified status.

Id. at 1338.

On remand, defendants filed a motion for entry of judgment, arguing that in light of the appellate reversal, the "case turn[ed] on whether the EBC properly determined that the Pension Plans' eligibility rules excluded leased workers." Appellees' Supp. App. at 2115. Defendants pointed out that the district court, in its previous order addressing the parties' cross-motions for summary judgment, had stated that "[i]f the issue presented to the Court was whether under the terms of its Plans US West must include all employees, . . . I would have to conclude that the answer is no and grant summary judgment in favor of US West." Id. at 2112.

Plaintiffs filed a response to defendants' motion for entry of judgment, arguing that the statement contained in the district court's prior order, and relied upon by defendants, was not meant to be dispositive. Plaintiffs asserted that, in its previous order, the district court had failed to address all of the arguments presented by plaintiffs in their original motion for summary judgment. Consistent with these arguments, plaintiffs filed a renewed motion for summary judgment,

8

essentially asking the district court to address the substantive arguments asserted in plaintiffs' previous motion for summary judgment. Plaintiffs argued that the pension plans in question "incorporate[d] the Internal Revenue Code and/or require[d] that [they] be interpreted in accordance with the Internal Revenue Code." Appellants' App. at 526. In their opposition to plaintiffs' renewed motion for summary judgment, defendants asserted, in part, that the plan language relied on by plaintiffs was "irrelevant because it did not exist until years after the EBC denied their claims and because it [wa]s not part of the administrative record that was before the EBC." Appellees' Supp. App. at 1989.[5]

On March 25, 1999, the district court conducted a hearing on the parties' motions. During the hearing, the district court asked plaintiffs' counsel the following question: "When you prepared your record for the [interlocutory] appeal, did you include as a part of the record this US WEST pension plan which says amended and restated effective January 1, 1989? Was that made a part of the

---

[5] According to defendants, the cited language came from a 1994 amendment to US West's Pension Plan which was made retroactive to 1989. The sole purpose of this amendment, according to defendants, was to comply with IRS regulations issued in 1993 outlining how plan sponsors were to conform to statutory changes implemented by Congress in 1988. In short, "the 1994 Restatement was prepared solely for tax purposes – to reflect the Pension Plan's qualified status between 1988 and 1993, so that an IRS determination letter could be obtained." Appellees' Supp. App. at 2008. The 1994 amendment "was never used for plan administration purposes, and was not effective in 1989 for any purpose other than those required by recent tax legislation and the implementing regulations." Id.

record?" Appellants' App. at 707. Plaintiffs' counsel did not remember whether it was included, but acknowledged that even if it was included he did not point it out to the appellate panel. The district court then asked plaintiffs' counsel whether there was "any evidence which would show that the [EBC] when it considered the status of these leased workers considered the" 1994 amendments which plaintiffs were relying upon in their renewed motion for summary judgment. Id. at 711. Plaintiffs' counsel responded "No." Id. Ultimately, the district court found

> that the plan that plaintiff now relies on was not a plan that the plan administrator used when it made its decision regarding the plaintiffs. And so, therefore, to the extent the Tenth Circuit in its decision that overruled me found that there cannot be any reliance on Internal Revenue Code provisions or Treasury regulations absent an explicit reference in an applicable plan, it seems to me that that holding is still applicable and has not been distinguished by the plaintiffs' renewed motion.

Id. Accordingly, the district court denied plaintiffs' renewed motion for summary judgment and granted defendants' motion for entry of judgment in their favor.

## II.

Because this case was decided in the context of a summary judgment ruling, we turn first to the well-established standard of review applicable to such rulings. "Review of a grant of summary judgment is de novo, applying the same legal standard used by the district court." Kimber v. Thiokol Corp., 196 F.3d 1092, 1097 (10th Cir. 1999). "Summary judgment is appropriate 'if the pleadings,

10

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)).

Notwithstanding the fact that we review de novo the district court's summary judgment ruling, we are also bound by a second, and more limited, standard of review. "A court reviewing a challenge to a denial of employee benefits under 29 U.S.C. § 1132(a)(1)(B) applies an 'arbitrary and capricious' standard to a plan administrator's actions if the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms." Charter Canyon Treatment Ctr. v. Pool Co., 153 F.3d 1132, 1135 (10th Cir. 1998) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)); see also Millensifer v. Retirement Plan, 968 F.2d 1005, 1009 (10th Cir. 1992) (stating "if the Plan gives the retirement committee discretion to construe doubtful provisions of the plan itself, the committee's decision must be upheld unless it was arbitrary and capricious, not supported by substantial evidence, or erroneous on a question of law") (internal quotations omitted).

Here, the uncontroverted facts demonstrate that the EBC had discretionary authority under each of the plans at issue to determine eligibility for benefits and to construe the plans' terms. Under the arbitrary and capricious standard of

11

review, we will not set aside a benefit committee's decision if it was based on a reasonable interpretation of the plan's terms and was made in good faith. See Jones v. Kodak Med. Assistance Plan, 169 F.3d 1287, 1292 (10th Cir. 1999); Averhart v. U.S. West Management Pension Plan, 46 F.3d 1480, 1485 (10th Cir. 1994). "[I]n reviewing decisions of plan administrators under the arbitrary and capricious standard, [we] may consider only the evidence that the administrators themselves considered" on or before the final decision denying benefits. Chambers v. Family Health Plan Corp., 100 F.3d 818, 823, 823-24 (10th Cir. 1996); see also Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 380-81 (10th Cir. 1992).

## III.

In order to properly address the arguments asserted by plaintiffs in this appeal, we find it useful to briefly revisit the rulings previously handed down in this case. In initially ruling on the parties' cross-motions for summary judgment, the district court concluded that if an employee satisfied the minimum participation requirements of ERISA § 202(a)[6], the employee was entitled to

---

[6] Section 202(a) of ERISA imposes on employer-provided pension plans what are referred to as minimum participation requirements:
(a)(1)(A) No pension plan may require, as a condition of participation in the plan, that an employee complete a period of service with the employer or employers maintaining the plan extending beyond the later of the following dates

(continued...)

12

participate in the employer's pension plan regardless of any other eligibility requirements that might be contained in the pension plan itself. The district court concluded that the minimum participation requirements of § 202(a) implicitly incorporated Internal Revenue Code (IRC) §§ 410 and 414 (26 U.S.C. §§ 410 and 414) and Treasury Department regulations promulgated thereunder. Section 410 of the IRC is similar to § 202(a) of ERISA in that it sets forth minimum participation requirements which are used by the IRS to determine whether a pension plan will receive preferential tax treatment. Section 414 of the IRC provides that, for purposes of applying § 410 of the IRC, leased employees are to be treated as employees of the company for whom they perform services. Taking all of these provisions together, the district court concluded that § 202(a) of ERISA required "the inclusion in the case at hand of leased employees who [met]

---

[6](...continued)
      (i) the date on which the employee attains the age of 21; or
      (ii) the date on which he completes 1 year of service.
      * * *
(4) A plan shall be treated as not meeting the requirements of paragraph (1) unless it provides that any employee who has satisfied the minimum age and service requirements specified in such paragraph, and who is otherwise entitled to participate in the plan, commences participation in the plan no later than the earlier of–
      (A) the first day of the first plan year beginning after the date on which such employee satisfied such requirements, or
      (B) the date 6 months after the date on which he satisfied such requirements.

29 U.S.C. § 1052(a)(1)(A) & (4).

the definition of common law employees under law." Appellants' App. at 456.

In Bronk I, this court rejected the district court's conclusions, holding that ERISA § 202(a) simply prevents an employer from making participation "distinctions based upon age or length of service." 140 F.3d at 1338. This court further rejected the notion that the minimum participation requirements of ERISA § 202(a) were implicitly modified by IRC §§ 410 and 414. In particular, this court concluded that, "absent explicit indication by Congress, the tax-qualification provisions of the [IRC] do not rewrite pension plans under ERISA § 202(a) to mandate inclusion of employees, leased or otherwise, whom the plans have permissibly excluded." Id. at 1339-40.

In reaching its conclusions, the court in Bronk I distinguished an earlier circuit case, Crouch v. Mo-Kan Iron Workers Welfare Fund, 740 F.2d 805 (10th Cir. 1984), upon which the district court had relied. In Crouch, this court held that the plaintiff, a secretary in a local union's office, was entitled to benefits under her employer's pension plan even though her employer had rejected her claim for benefits on the grounds she was not a union officer. The Crouch decision rested on two related grounds: (1) the pension plan at issue expressly indicated that it must comply with ERISA, the IRC, and accompanying Treasury regulations regarding tax qualification (in other words, it must maintain tax-qualified status), and (2) precluding plaintiff from participating in the pension

14

plan would result in the plan failing to meet the tax qualification requirements. The court in Bronk I concluded that, unlike Crouch, there was no evidence that the pension plans at issue in this case "contained similar language requiring the plans to comply with all [IRC] and Treasury regulations, as well as ERISA." 140 F.3d at 1338 n.5. In reaching this conclusion, the court in Bronk I rejected plaintiffs' counsel's argument to the contrary, and specifically noted that "[t]he document in the record to which the [plaintiffs'] counsel refers us as supporting his argument does not demonstrate that the plans here included any obligation, explicit or otherwise, to maintain tax-qualified status." Id.

On remand, plaintiffs adopted two strategies. First, they attempted to present new evidence (i.e., evidence not considered by the EBC or previously presented to the district court or this court) indicating that amendments made to the Pension Plan in 1994, but which were retroactive to January 1, 1989, specifically required the Pension Plan to comply with ERISA and the IRC. In other words, plaintiffs attempted to present new evidence to the district court in an effort to persuade it that the Pension Plan was like the pension plan at issue in Crouch. Second, plaintiffs argued that, even ignoring the 1994 amendment to the Pension Plan, the EBC's decision was arbitrary and capricious because the facts demonstrated that they were "regular employees" of the defendants and were entitled to participate in the pension plans. As previously noted, the district court

15

rejected both of these strategies and entered judgment in favor of defendants.

Plaintiffs reassert these same arguments on appeal. First, they contend the district court erred in failing to take into account the 1994 amendment to the Pension Plan. According to plaintiffs, the 1994 amendment demonstrates that the Pension Plan is similar to the plan at issue in Crouch, and must be construed to comply with ERISA and IRC §§ 410 and 414. Second, plaintiffs argue that, even ignoring the 1994 amendment to the Pension Plan, the facts demonstrate they were "regular employees" of defendants and were entitled to participate in and receive benefits under the pension and welfare plans. For the reasons that follow, we reject these arguments.

The Bronk I panel effectively concluded that none of the pension plans at issue (including the Pension Plan) included an express obligation to maintain tax-qualified status. Under the law of the case doctrine, this same issue could not be relitigated on remand. See Phelps v. Hamilton, 122 F.3d 1309, 1322 (10th Cir. 1997) ("The law of the case doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.") (internal quotation omitted); Rohrbaugh v. Celotex Corp., 53 F.3d 1181, 1183 (10th Cir. 1995) ("[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate

16

court in any subsequent appeal."). An "important corollary" to the law of the case doctrine, "known as the 'mandate rule,' provides that a district court 'must comply strictly with the mandate rendered by the reviewing court.'" Ute Indian Tribe v. State of Utah, 114 F.3d 1513, 1520-21 (10th Cir. 1997) (quoting Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of America, 962 F.2d 1528, 1534 (10th Cir. 1992)), cert. denied, 522 U.S. 1107 (1998). Although there are a few narrow exceptions to the law of the case doctrine, none are applicable here. See United States v. Monsisvais, 946 F.2d 114, 116-17 (10th Cir. 1991) (holding that a court will depart from the law of the case doctrine: (1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice).

Further, the amendment was not considered by the EBC in denying plaintiffs' administrative appeal (and indeed could not have been considered because the EBC's decision was rendered in September 1991). It is well established that, in determining whether ERISA plan administrators acted arbitrarily and capriciously in making eligibility and/or benefit determinations, this court "may consider only the evidence [and arguments] that the administrators themselves considered." Chambers, 100 F.3d at 823. "An

17

administrator's decision is not arbitrary or capricious for failing to take into account evidence not before it." Sandoval, 967 F.2d at 381. There was no basis for the district court (or this court) to consider the 1994 amendment.

Even assuming, arguendo, the 1994 amendment should have been considered, and further assuming the 1994 amendment could be construed as requiring the Pension Plan to maintain tax-qualified status, it is clear that it would not have made any difference in the outcome of this case. In Bronk I, the panel noted that IRC §§ 410 and 414 do not necessarily require the inclusion in a pension plan of all persons who meet the definition of common-law employee. 140 F.3d at 1339. Rather, common-law employees must be included only when the pension plan at issue expressly includes an obligation to maintain tax-qualified status, and where the exclusion of common-law employees would jeopardize the plan's tax-qualified status. Here, defendants presented evidence, unchallenged by plaintiffs, that the Pension Plan maintained its tax-qualified status at all times relevant to this lawsuit, notwithstanding the exclusion of the plaintiffs. Thus, the EBC's decision to exclude plaintiffs did not violate the terms of the Pension Plan, even as amended in 1994. The terms of the 1994 amendment expressly exclude leased employees from participating in the Pension Plan.

The remaining issue is whether the EBC acted arbitrarily and capriciously when it determined that plaintiffs were not "regular employees" for purposes of

18

the pension and welfare plans. Plaintiffs' arguments on this point are, at best, confusing. Plaintiffs rely on Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 319 (1992), in which the Supreme Court construed the term "employee," as used in ERISA, "to incorporate traditional agency law criteria for identifying master-servant relationships." The problem is that Darden does not in any way alter the specific eligibility requirements in the plans at issue. Even though plaintiffs may in fact qualify as "employees" under Darden (for purposes of ERISA generally), that does not mean they otherwise satisfy the plans' eligibility requirements. Ultimately, it appears that plaintiffs are relying on an equitable argument, i.e., that because they were in fact common-law employees of defendants, it would be unfair to exclude them from participation in the defendants' pension and employee benefit plans. This argument, though perhaps appealing in some respects, simply ignores applicable law and the specific eligibility requirements of the plans at issue.

Focusing on the evidence contained in the record on appeal that was presented to the EBC, we conclude the EBC did not err in concluding that plaintiffs were ineligible for benefits under the plans at issue. Although plaintiffs may have been similar in many respects to defendants' ordinary or "regular" employees, it is uncontroverted that plaintiffs were hired as employees of the various leasing companies, who in turn entered into leasing contracts with

19

defendants. Under this arrangement, plaintiffs were not on the payroll records of defendants and did not receive compensation directly from defendants. Instead, defendants paid the leasing companies in accordance with the leasing contracts and, in turn, the leasing companies paid plaintiffs for their work. Plaintiffs did not receive a regular and stated compensation from defendants, were not classified as employees according to the defendants' payroll records, and, in short, were not "regular employees" of the defendants.

III.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

20